Gantt, P. J.
On the sixteenth of December, 1890, the appellant, the St. Louis Bridge & Iron Company, entered into a written agreement with the respondent, by which it agreed to do all the excavation and piling required for the new Excelsior Brewery, in accordance with the specifications furnished by the superintending architects and adopted for said work.
At the time the contract was made, it was believed that the site on which the brewery building was to be erected consisted of made or filled ground. The specifications, among other things, require sounding piles to be driven at at least twelve different points in the premises wherever directed. The excavation contemplated by the contract, was the excavation of the trenches for the walls of the building. The sounding piles were to be driven before the trenches were dug, and all other piles required were to be driven in the trenches. Appellant was to be paid a lump sum for the excavation, and fifty cents per cubic yard for all additional excavation required. For the piling it was to be paid twenty-two and one half cents per lineal foot. Neither the contract nor the specifications indicate the number of piles to be driven.
E. Jungenfeld & Company were the superintending architects, andF. Widmann, a member of the firm, was in charge of the work. H. W. Sebastian was the president, treasurer and manager of the Bridge & Iron Company, and represented it in this transaction. To *350 all intents and purposes lie was the plaintiff. He drove fifteen sounding piles at such points in the premises as Widmann indicated. Widmann says when the last pile was driven, he ashed Sebastian, “How do they drive?” "He answered, “They are driving awfully' hard, Mr. Widmann, and I think that it is not necessary to drive piles in such a good soil.” Immediately after the sounding piles were driven, plaintiff began to excavate the trenches. They were dug somewhat deeper than first contemplated, and Widmann, furthermore, had a hole dug at the lowest point in the premises, as an additional means of determining the character of the soil. At about twelve feet below the surface good yellow clay was found. It was then apparent that it would be useless to drive piles.
In designing the building before work was begun, and under the belief that the site consisted of made or filled ground, a plan was prepared showing dots within the lines of the trenches. These dots indicate the piles which, it was expected, would have to be driven. Upon discovering that the top filling only was of made ground, and that at about twelve feet below the surface the soil consisted of good yellow clay, the superintending architects determined that no further piling was required, and in lieu of piling, concluded to widen and deepen the trenches down to the bed of clay, and to put concrete, instead of piling, in the trenches; and to carry out that idea a new plan was prepared, indicating the change. Plaintiff was notified that no further piling would be required, and was given the contract to do the additional excavation necessary to widen and deepen the trenches. This contract is dated January 8, 1891, and two days later plaintiff submitted a bid for all the concrete and masonry work required by the new plan.
It appeared from the testimony that piles for the foundation of buildings are driven only where the *351 buildings are put up on alluvial, swampy or made ground. Mr. Sebastian bimself testified that clay is a good foundation for buildings; that piles in such soils are unnecessary and never driven. He admits that he was notified by the architects on the first of March, 1891, that they had dispensed with the piling, but claims not to have been so informed before that day. He sent his draughtsman to the office of the architects on the ninth or tenth of January, 1891. This draughtsman knew the old plan, and saw the new one at that time, and discovered at once that the latter omitted piling altogether. The draughtsman took from the new plan the data upon which plaintiff, on the same or the next day, based its bid for the concrete and masonry. The original and second plans were produced in court. The latter showed that the piling was omitted, and that the width and depth of the trenches were changed. The defendant produced the contract of January 8, 1891, for the additional excavation, and plaintiff asked that it be given in evidence, which defendant did. Defendant also, without objection, offered plaintiff’s bid for the concrete and masonry work. The bids for concrete were taken under the second plan; none had been called for under the first. In case piles are to be driven in a trench, they must necessarily be driven before the concrete is put in.
Mr. Widmann, the architect, was asked: “When Mr. Sebastian made the second contract with you, did he know that you did not intend to drive piles in the trenches? A. Yes, sir, or else we would not have made the second contract.
“Q. At the time that the second contract was made, what claim, if any, did Mr. Sebastian make that he had a contract with you to drive seventeen hundred and forty-five piles additional. A. He made no statement or made no claim whatever.
*352 u Q. When did you first learn that he claimed that he had a contract with you for seventeen hundred and forty-five additional piles? A. At the time he brought in this bill.” (June 29, 1891.)
As the excavation in the trenches was made, the concrete work followed right up. They were practically made at'the same time. Plaintiff suffered no loss on material, or otherwise, and is suing solely for loss of profits on the contract. It claims that it had so good a contract that work and material which would have cost it $7,622.30 would have cost the defendant, at twenty-two and one half cents per lineal foot, $13,741.87-2-, and it claims that the difference between these two sums, namely, $5,819.57-§-, is the profit which it would have made if it had been allowed to drive seventeen hundred and forty-five additional piles.
The supposed profit is based upon the assumption that plaintiff could have driven twenty-five piles a day, whereas Sebastian’s own testimony is that piles are never driven in clay soil for buildings, and that in his opinion they can not be driven so as to penetrate a bed of clay. The evidence is uncontradicted that the ground at the bottom of the trenches, as deepened under the second contract, was good, natural clay soil.
The plaintiff asked three instructions, of which the court gave two. The defendant asked six instructions, of which the court gave one, modified one, and gave it of its own motion, and refused the remaining four instructions.
The instructions as given are as follows:
For the plaintiff:
“1. The court declares the law to be that when one party contracts to drive piling for another, which contract the latter party prevents him from fulfilling, his damages are the loss of profits sustained, which are *353 the difference between the contract price and the cost of performing the contract.
“2. The court declares the law to be that a waiver or an estoppel in pais by conduct can not be asserted against a party, unless the evidence shows that it is certain and plain, and not doubtful, nor matter of questionable inference.”
By the court of its own motion:
“The agreement of December 16, 1890, given in evidence by the plaintiff, reserved power to the superintending architects to reject the whole or any part of the material or work called for by the contract, and, moreover, gave them power to make any deviation from, or alteration in, the plan, form, construction, detail, or execution of the work provided for in said contract, and made their opinion, certificate, report and decision on all matters involved in said contract, binding and conclusive on the plaintiff, and, therefore, if the court, sitting as a jury, find from the evidence that the superintending architects of said building rejected the piling, other than the fifteen sounding piles, or made such deviation from, or alteration in, the plan, form or construction of said building as to dispense with all piling therein, except said sounding piles, and gave it as their opinion, and did decide, that no piling should be used in the foundation of said building or elsewhere, and if the court, sitting as a jury, further finds from the evidence that plaintiff had notice of said change in said plans, within a reasonable time after the same was determined on by said architects, and that plaintiff acquiesced therein, then plaintiff is not entitled to recover for any piling omitted in consequence of such change, nor for any loss of profits now claimed to have ensued to plaintiff on account of the omission of such piling.”
*354 For the defendant:-
“If the court, sitting as a jury, finds from the evidence that defendant’s architects, availing themselves of the right reserved by said contract, altered the plans for the foundation of the new Excelsior Brewery by omitting and dispensing with piling in said foundation, and prepared a new plan and specifications from which the piling is omitted, and that afterward, on or about the eighth day of January, 1891, plaintiff entered into contract with defendant to deepen the trenches for said foundation, and examined said new plan and specifications; and if the court further finds from the evidence that according'to said new plan and specifications no piling was to be driven in said foundation, and further finds that plaintiff, with a knowledge of this fact, submitted to defendant a bid for the concrete and masonry required by said new plan, and solicited from plaintiff a contract for said work, then the court may infer from the facts aforesaid that plaintiff had notice of the alteration of the original plan for said foundation, and of the substitution of said new plan, and of the decision of said architects to dispense with piling in said foundations.”
The court, sitting as a jury, on the twenty-second day of July, 1893, rendered a verdict for the plaintiff on the first breach of contract charged in the petition for the sum of $136.12|, and found against the plaintiff on the second breach of contract found in the petition, and gave judgment for plaintiff for $136,123;.
In the motion for a new trial, plaintiff claims:
“Fourth. The court erred in granting improper instructions, asked for by the defendant.
“Fifth. The court erred in refusing proper instructions, asked for by the plaintiff.”
But it takes no exception to the instruction given by the court on its own motion.
*355 Only- one instruction asked by tbe plaintiff was refused, and that is as follows:
“The court declares the law to be, that, under the pleadings in this case, the question of the waiver of the contract sued on can not be considered.”
I. The questions involved in this appeal are few and simple. The appellant insists that the court erred in considering a question of waiver, when no such question was presented by the pleadings. We think this is a misconception of the court’s action. The appellant’s contract of January 8, 1891, and its bid of January 10, 1891, were properly received by the court for the purpose of showing notice to plaintiff of the authorized change of the plan of the work. The contract was not annulled in any sense. The defendant’s architect by virtue of a stipulation in the contract simply changed the plan when the test showed that it was not practicable to use piling. This was not a violation of the contract but a compliance with its terms, the exercise of a right expressly reserved.
The instruction given by the court, simply required defendant should give plaintiff reasonable notice of this change of the plan and if plaintiff did receive such notice then it could not recover for any piling omitted in pursuance of such change and notification. This was a correct declaration of the law, but, if it had not been, plaintiff not having made it the ground for a new trial, it would not constitute reversible error.
There was ample evidence that plaintiff had timely notice of the change of the plan, and in this way “acquiesced.” It bid on and received the contract for filling the trenches with concrete and was paid in full for the substituted work. Indeed there seems to be little merit in this appeal.
*356 The plaintiff in its second instruction introduced the question of waiver and estoppel in pais into the record, and, having invited the court to consider those questions, it can not now be heard to complain on that score.
There is nothing tending to show that defendant arbitrarily changed its plans to plaintiff’s injury or that the architects were guilty of fraud in so doing; on the contrary, the suggestion seems to have come from Mr. Sebastian himself to Mr. Widmann that it was not necessary to use piling in such soil.
The plaintiff had a contract for only so much piling as was required by the plans for that building. Had it been built on the original plan it would have required a much larger amount than the modified plans required, but it was employed to furnish all that were required and was tendered payment therefor according to the contract. The court gave it judgment for all it. was entitled to and the judgment is affirmed.
Shebwood and Bubgess, JJ., concur.