THOMAS PETERS, Respondent, v. THE KANSAS CITY RYS. CO., Appellant.

Kansas City Court of Appeals, May 10, 1920.

1. **MASTER AND SERVANT: Interstate Commerce: Federal Employer's Liability Act.** Where the plaintiff was employed in crushing coal at a power house where electricity was generated for the operation of an electric railway, and the only evidence in the case as to the nature of the electric railway operated is that defndant operated "street cars," there is no showing that defendant was engaged in interstate commerce, so as to bring the plaintiff under the Federal Employer's Liability Act.

2. ———: **Negligence: Master's Knowledge of Danger: Petition.** An allegation that defendant "carelessly and negligently caused the hopper of said crusher to be overloaded with coal, and that thereupon plaintiff complained to plaintiff's foreman of the danger" sufficiently charges the defendant with knowledge of the danger.

3. **TRIAL PRACTICE: Evidence: Objection.** An objection to a question as to the foreman's authority to reassure plaintiff that

there was no danger in going on with the work, on the ground that it is incompetent, irrevelant and immaterial is of no avail when the answer is inadmissible because it is a conclusion of the witness.

4. ——— :———: ———. It is not error to overrule an objection to a hypothetical question on the ground that "it is not a proper hypothetical ·question," the objection must state the necessary elements omitted in the question or the improper matter included.

5. **EVIDENCE: Annuity and Mortality Tables: Statutes.** Where there is evidence of a permanent injury it is proper to admit in evidence section 5968, Revised Statutes 1879, containing tables of Mortality, and section 8499, Revised Statutes 1909, containing Annuity Tables.

6. ———: **Accident Insurance Table: Settlement.** It was not error to exclude testimony to the effect that plaintiff had made an adjustment under an accident insurance policy for the same injuries sued on for a very small sum.

7. **MASTER AND SERVANT: Assumption of Risk.** A servant never assumes the risk of his master's negligence.

8. **DAMAGES: Loss of Time: Petition.** An allegation that plaintiff lost and will continue to lose much money by reason of his lessened ability to earn money is broad enough to cover loss of wages, both past and future.

9. **APPEAL AND ERROR: Motion for New Trial: Instruction Modified by the Court.** A motion for a new trial which objects to the instructions given on behalf of the plaintiff does not preserve for review the action of the court in giving an instruction modified by the court, though requested by plaintiff before modification, such instruction as modified not being one give on plaintiff's behalf.

Appeal from Clay Circuit Court.—*Hon. Ralph Hughes,* Judge.

AFFIRMED.

*Clay C. Rogers, Virgil Yates, J. N. Beery* and *Prince & Harris* for respondent.

*Ben T. Hardin* and *R. J. Higgins* for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $2500 and defendant has appealed.

Defendant maintained at its power house at 2nd and Grand Avenue, in Kansas City, Missouri, a coal crusher used to crush coal for use there. On September 1, 1916, plaintiff was directed to work at said crusher. The work that plaintiff was required to do was to use an iron bar in aiding the coal in its passage through the crusher and to keep the crusher from becoming clogged. Plaintiff had worked little at the crusher before said date and he testified that he had but very little experience with it; that he had worked two or three days at it "about a-half or an hour each time."

The crusher consisted of a hopper about three feet, square by two and one-half feet high. The coal was crushed by a revolving roller which was about twenty-one inches below the top of the hopper. This roller had a number of lugs on it which crushed the coal as it passed down between the roller and the side of the hopper. The roller revolved from north to south. Two men stood on the north side of the hopper, each with an iron bar which they used as indicated, supra. When a chunk of coal appeared that was too large to pass through the roller the men would stir the coal, punching the chunks and breaking them with the bar whenever they could. If the iron bar should be pushed down far enough to come in contact with the lugs the bar would be caught and jerked or thrown. There was no danger in working at the crusher when it was not overloaded with coal as the workmen could see the roller and know where to place the bar he was using. When the crusher was "overloaded" he could tell nothing about it. Plaintiff with his fellow workman, Biggs, was working at the crusher on the morning of the day mentioned. The coal had been coming down into the crusher too fast; it was falling over the top of the crusher and had covered up the roller so that plaintiff and his companion could not see it. His companion first called the foreman's attention to the condition and the foreman replied, "Go ahead, there is no danger there." The coal continued to come into the crusher so fast

that plaintiff could not see where his bar was going, and he complained to the foreman about the condition. The foreman answered him in the same way that he had answered his companion, Biggs, that "there was no danger, go ahead." Shortly after plaintiff had protested about the condition of the crushes and before the crusher had gotten clean, the iron bar that plaintiff was using caught on one of the lugs of the roller and the end of the bar violently struck plaintiff in the abdomen, severely injuring him.

Defendant's first point is that the judgment cannot stand for the reason that the evidence shows that the power house at which plaintiff was working generated electricity for the operation of an electric railway engaged in interstate commerce, as the current from the power house was used in part for the propulsion of cars from Kansas City, Missouri, to Kansas City, Kansas, and that the Federal Employers' Liability Act applies, and that the petition states no cause of action under such Act. The coal that plaintiff was crushing was used to generate this electricity.

The petition alleges that defendant was doing business as a street railway corporation in Kansas City, Jackson County, Missouri, "and for the purpose of operating said street railway system . . . owned and operated a certain coal crusher for the purpose of crushing coal." The answer consisted of a general denial and a plea of common-law contributory negligence. The answer contained no plea that plaintiff and defendant were engaged in interstate business. The instructions on both sides show that the case was submitted under the common law of Missouri and not under the Federal Employers' Liability Act. One of defendant's instructions told the jury that if plaintiff was guilty of any contributory negligence the verdict should be for defendant.

The evidence is not as plain as it might be in showing as to exactly what kind of an electric railway defendant was operating, whether exclusively a street

railway for passengers or that it, in addition, operated interurban, freight or express cars. The only evidence on the subject is that it operated "street cars." Now ordinary street cars (and not interurban or suburban cars) operated on streets of cities for the carriage of passengers do not come under the Federal Employers' Liability Act. [Omaha Street Ry. v. Int. Com. Comm., 230 U. S. 324; Kansas City Ry. v. McAdow, 240 U. S. 51, 54; Spokane, etc., Rd. Co. v. United States, 241 U. S. 344; Spokane, etc., Rd. Co. v. Campbell, 241 U. S. 497; Washington Ry. & Elec. Co. v. Scala, 244 U. S. 630, 638.] From the evidence we fail to find that defendant was operating such a street railway as comes within the Federal Employers' Liability Act.

It is contended that the petition fails to state a cause of action because there is no allegation of any knowledge on defendant's part, prior to the accident, of any danger in connection with the work which plaintiff was performing. There was no objection made to the petition except an objection to the introduction of evidence, a method of attacking a petition that is not looked upon with favor. Under the circumstances we are required to give a liberal construction to the petition and if it states any cause of action whatever, we must hold it good, although it may be defectively stated. The petition alleges that "while plaintiff was performing his said duties, the defendant carelessly and negligently caused the hopper of said crusher to be overloaded with coal . . . and that thereupon plaintiff complained to plaintiff's said foreman and vice-principal of the danger of performing said work so required of him by reason of the overloading of said hopper as aforesaid." If defendant caused the hopper to be overloaded and plaintiff told defendant's agent of the danger of performing the work by reason of its being overloaded, then defendant was aware of the danger connected with the work. [Cardwell v. Chi. G. W. Ry. Co., 90 Mo. App. 31; Bellamy v. Whitsell, 123 Mo. App. 610; Clippard v. Transit Co., 202 Mo. 432; Johnson

v. Mo. Pac. Ry. Co., 96 Mo. 340; Crane v. Mo. Pa. Ry. Co., 87 Mo. 588.]

It is next insisted that the court erred in permitting plaintiff to testify that DeKrauff was his foreman and that plaintiff relied upon and believed what the foreman told him in regard to there being no danger connected with the using of the bar with the overloaded crusher. In this connection defendant insists that plaintiff neither alleged nor proved that there was any danger existing at that moment nor that defendant had any knowledge of such danger. From what we have said these contentions must be ruled against the defendant. There is further objection that it was not shown that the foreman DeKrauff had any authority to reassure plaintiff. There is no objection in the record, at the page cited by defendant in connection with this point, going to this latter objection now made by the defendant. The objection was that it was incompetent, irrelevant and immaterial. This, under the circumstances, was no objection at all. [Kelly v. American Central Ins. Co., 192 Mo. 20.] The evidence was very material and there was no objection made on the ground that the witness was stating his conclusion.

It is next insisted that the court erred in overruling defendant's objection to the testimony of plaintiff that he "heaved" blood, that he spit blood, that blood passed through his "compassities." From the record we conclude that plaintiff in using the word "compassities" meant that he passed blood in his urine. It is insisted that there is no allegation in the petition covering such injuries. The petition alleged that plaintiff's stomach, bladder, bowels, kidneys and liver were badly sprained, injured and bruised; that his back was bruised, sprained and injured. There is no doubt but that the petition was broad enough to cover the matters objected to. The spitting, "heaving" and passing of blood in the urine, shortly after the injury, was evidence of the internal injuries complained of. [Bergfeld v. Dunham, 202 S. W. 253; Costello v. Kansas City, 219 S. W. 386.]

It is contended that the court erred in overruling defendant's objection to a hypothetical question asked Dr. Miller. The objection to the question was that "it was not a proper hypothetical question." This kind of an objection is not sufficient to raise any point as to whether the question was proper, as the objection did not state what necessary elements were omitted or what matters the question contained that were not proved. [Orr v. Bradley, 126 Mo. App. 146, 152.]

It is next urged that the court erred in admitting in evidence section 5968, Revised Statutes 1879, and section 8499, Revised Statutes 1909. It is urged in this connection that there is no evidence that plaintiff's injuries disabled him permanently. The tables contained in these sections of the statute would not be admissible unless there was such evidence. [Mott v. Detroit, etc., R. R. Co., 120 Mich. 127, 136; Greer v. L. & N. Ry. Co., 94 Ky. 169, 176; Kerrigan v. Penna. R'd. Co., 194 Pa. St. 98, 106.] Plaintiff testified that he had been unable to work since the injury, which occurred more than two years before the trial, and that his health was always good before the injury. There was evidence on the part of plaintiff's physician tending to show that his injuries were permanent. Under the circumstances section 5968, Revised Statutes 1879, containing tables of mortality, based on the American experience tables, for the use of the superintendent of insurance in the valuation of life insurance policies, was competent. [Collins v. Paper Mill Co., 143 Mo. App. 333, 342.] It was likewise competent to introduce section 8499, Revised Statutes 1909, containing annuity tables showing the present value of a life estate at a given age, on the basis of six per cent. interest, the calculation being founded on the Carlisle tables of mortality. Annuity tables no matter where found, if properly established and authenticated, are admissible in evidence in personal injury cases where the injury is claimed to be permanent. No more authentic source could be thought of than a publication under the direction of the legislature. [Clark v. Van

Vleck, 112 N.' W., 648 (Iowa).] That such tables are only competent in computing the present value of a life estate such as a life tenancy or estate by, courtesy or in dower, as defendant contends, is not true. The use of these tables has been approved in computing the reasonable cost of maintenance of a woman during her expectancy in a suit by her against the estate of a person who had contracted to take care of her the rest of her life. [Morris v. Donovan, 159 Mo. App. 401.] We have no doubt of the competency in personal injury cases of section 8499, Revised Statutes 1909, containing the annuity tables therein set forth.

It is urged that the court erred in not instructing the jury in what way the tables should be applied. No doubt, this would be better practice but we cannot go to the extent of saying that it was error not to do so. [Morgan v. Mulhall, 214 Mo. 451, 462, 463, 464; Davis v. Met. St. Ry. Co., 188 Mo. App. 128, 142.] Of course, defendant could have asked the court for an instruction concerning these tables but it did not do so.' The case of Stevens v. K. C. Elec. Light Co., 200 Mo. App. 651, is not authority for the contention that plaintiff was required to give an instruction explaining these tables. In that case *an instruction was given* on behalf of plaintiff *that was erroneous.*

It is next insisted that the court erred in refusing to allow Dr. Russell, for the purpose of impeaching plaintiff, to testify that plaintiff had an accident insurance policy in the company by which, Dr. Russell was employed, and to state that twenty-four days after the accident he made an adjustment with plaintiff in the sum of $21, and that plaintiff's claim against the insurance company covered the same injuries sued for in this case. It is not contended that it was competent evidence to show that plaintiff had accident insurance but it is urged that it was competent to show that he settled for an insignificant sum as tending to show that plaintiff's injuries were trivial. We fail to see how the testimony could have been competent. Accident policies

are not all alike and each of them usually contains a great many provisions limiting the amount of recovery on the part of the insured. The amount of recovery is not necessarily to recompense the insured in full for his injuries. Some accident policies provide for the payment of periodic indemnities in amounts greatly varying, depending upon the amount of the premium. The amount for total disability also varies. For this and other reasons we are unable to see how it was competent in this case to prove the amount of the settlement, twenty-four days after plaintiff's injury, of his accident insurance policy.

It is urged that the court erred in allowing plaintiff to testify that DeKrauff was his foreman. The general superintendent of defendant's plant was called as a witness and testified that DeKrauff, the person to whom plaintiff complained that the work was dangerous, was not plaintiff's foreman but was the foreman of the mechanics in the power house; that plaintiff's foreman was one Markley, who had charge of the coal gang. There is other evidence on the part of defendant tending to show these facts. However, several witnesses on the part of plaintiff testified to the fact that DeKrauff was plaintiff's foreman. Most of them testified to this fact without any objection on the part of the defendant. The evidence on both sides raised a question for the jury and the jury having determined the same matter cannot be reviewed by us. The particular matter now raised in connection with this point was not properly objected to. There was no objection to the questions until after the answers were given. The court did not refuse to permit defendant's witness, Peterson, to testify that DeKrauff was the foreman of the machinery repairing gang and that Markley was foreman of the coal workers, as claimed by the defendant. The court permitted defendant to go fully into these things and did not sustain any objection except those to the witness giving his conclusions.

The court did not err in refusing to give defendant's instruction in the nature of a demurrer to the evidence, on

the ground that plaintiff assumed the risk. A servant never assumes the risk of the master's negligence. [Doody v. Calif. Woolen Mills Co., 216 S. W. 531, 534; Patrum v. Railroad, 259 Mo. 109, 120, 121.]

There was no error in giving plaintiff's instruction No. 2 on the measure of damages. The petition alleged that plaintiff "has lost and will in the future continue to lose much money by reason of his lessened ability to earn money." Plaintiff's instruction No. 2 permitted the jury to consider in assessing the damages, his "disability, if any, his pain and suffering, if any, occasioned by reason of his injuries, if any, his loss of time and wages, if any, his future loss, if any, of time and wages and his future disability and pain," etc. It is claimed that there is no loss of time and wages pleaded and that the instruction permits recovery of treble damages, that is, time, earnings and disability. We think there is nothing in this contention. The allegation that plaintiff lost and will continue to lose much money by reason of his lessened ability to earn money is broad enough to cover loss of wages, both past and future. The jury by the instruction would not understand that they were to award him damages more than once for loss of past and future earnings. Wages and loss of time are understood to be the same thing. [Bradford v. City of St. Joseph, 214 S. W. 281, 285.]

Objection is also made to plaintiff's instruction No. 1 as modified by the court. We find that defendant failed to call the court's attention in its motion for a new trial to the instruction given by the court of its own motion. The motion for a new trial complains of instructions Nos. 1 and 2, given on behalf of plaintiff. This was not sufficient to attack the instruction given by the court. [Johnson v. Waverly Brick &Coal Co., 205 S. W. 615, 618.] The case of Wampler v. Railroad, 269 Mo. 464, is not a case in favor of the defendant on this point. There, the motion for a new trial objected to "each and all of the instructions," (l. c. 472) while the motion in the case at bar does not object to the instructions as a whole but

only to those given on behalf of the plaintiff. It is contended by the defendant, however, that the instruction as offered by plaintiff was erroneous and that the trial court modified the same in order to supply a necessary element left out in plaintiff's instructions, to-wit, that plaintiff was not guilty of contributory negligence; that plaintiff is not appealing and is not complaining of the amendment; that defendant is the appellant. It has been often held that when a court modifies an instruction it ceases to be the instruction offered by the party but becomes the court's instruction. [Jordan v. Transit Co., 202 Mo. 418, 431; Maxey v. Met., 95 Mo. App. 303, 311, 312; Bridge & Iron Co. v. Brewing Co. Ass'n., 129 Mo. 343.] It is true that in these cases the trial court amended the appellant's instructions but we fail to see how this could make any difference.

The abstract of the record filed here by appellant shows that the instruction under discussion was given at the request of plaintiff but respondent has filed an additional abstract showing that the instruction was refused by plaintiff, but was modified by the court and then given. The modification consisted of the insertion of the words "while in the exercise of ordinary care for his own safety." Appellant's counsel in explaining how this discrepancy in the two abstracts of the record came about, states that original bill of exceptions, as it came from the court stenographer and before being corrected, contained the recitation that he has set out in his abstract; that he delivered the bill of exceptions as it came from the stenographer to plaintiff's counsel and that plaintiff's counsel made a great many corrections therein, appearing on several different pages of such bill of exceptions; that defendant's counsel agreed to these corrections and made the same corrections on his copy and that it was his copy that he sent to the printer to be printed as the abstract of the record in the case; that he failed to see the insertion made in the bill execeptions by the plaintiff's counsel to the effect that the instruction was not given as originally asked, but after the insertion had been made therein

by the court. Appellants counsel does not state that the last-mentioned correction was not in the bill of exceptions at the time he made the corrections in his copy and consented to the corrections made, but says that he did not see the same, although he cannot understand why he did not. Counsel for plaintiff, in view of the language used in appellants brief, seems to feel that counsel for appellant has made a reflection upon him as to his honesty and that appellants counsel intimates that the insertion in controversy was made after all the corrections were agreed upon between counsel. Counsel for appellant says that he does not make any such insinuation but merely calls the court's attention to the situation as he claims it was. We fail to see anything reflecting upon either counsel, for the reason that it is apparent, we think, that the insertion in controversy was made by plaintiff's attorney before the corrections were agreed upon by the parties and that through an oversight appellant's counsel failed to see the correction. However, we must take the record as it is presented to us by the abstracts, and in view of respondent's additional abstract of the record we are compelled to hold under the decisions that appellant did not properly raise in its motion for a new trial any question in reference to the court's instruction No. 1. In view of the fact that we must take the abstracts as they are presented to us, a contention that they do not represent what actually took place at the trial is out of place here unless a request is made in the proper way that the original bill of exceptions be ordered up. Attorneys should get their bills of exceptions filed in the lower court with the proper corrections, if any are to be made, and then see that their abstracts are made from the original bill of exceptions.

From what we have said the verdict is not excessive. The judgment is affirmed. All concur.