OLD BANK OF STOUTSVILLE, Respondent, v. JERRY CURTISS, Administrator of the Estate of JAMES CURTISS, Deceased, Appellant.

St. Louis Court of Appeals. Opinion Filed April 1, 1924.

1. **LIMITATIONS, STATUTE OF:** Claims Against Estates: Time of Filing: Statutes: Construction. Under section 181, Revised Statutes 1919, relating to demands against estates exhibited after the end of six months and within one year after the date of the granting of the first letters on the estate, and section 182, providing that said one year shall begin to run from the date of the granting of the first letters on the estate where notice shall be published, the first insertion within ten days after letters are granted, and that all demands not thus exhibited within one year shall be forever barred, construed with reference to section 7058 providing that the time within which an act shall be done shall be computed by excluding the first day and including the last, a claim filed against an estate on April 26, 1921, on which letters were granted April 26, 1920, and publication made within ten days thereafter, *held* filed within the period prescribed by statute.

2. **WITNESSES:** Action by Bank Against Administrator on Notes Bearing Deceased's Signature: Officers of Bank Comptent as Witnesses. In an action by a bank against an administrator based on notes bearing deceased's signature, signed by deceased's son, and alleged to have been ratified by deceased, officers, agents and employees of plaintiff bank were not interested in the result of the suit, within the meaning of the statute prohibiting testimony of persons interested in the result of the suit where the other party is dead, they being persons distinct from the corporation asserting the claim, and hence their testimony that deceased told them that it was all right for his son to sign his name to the notes, that he would take care of them, was admissible.

3. **INSTRUCTIONS:** Purporting to Cover Whole Case and Direct Verdict: Defense of Insanity Ignored: Error Unless Cured by Defendant's Instructions. In an action on notes against an administrator, where defendant interposed insanity of deceased as a defense, an instruction purporting to cover the whole case and directing a verdict, which completely ignored the issue of insanity raised by defendant's evidence, was error unless proper instructions covering the defense of insanity on behalf of defendant cured the defect tendered by that issue.

4. ———: ———: ———: **Not Cured by Defendant's Instructions: Error.** In an action by a bank against an administrator on promissory notes bearing deceased's signature signed by his son, and alleged to have been ratified by deceased, where defendant administrator interposed insanity of deceased as a defense, an instruction purporting to cover the whole case and directing a verdict for plaintiff which completely ignored the issue of insanity raised by defendant, and the instructions given on behalf of the defense did not fully and sufficiently cover the defense of insanity so as to cure the defect or omission in plaintiff's instruction, *held* such omission constituted error.

5. ———: **Modified by Court: Effect.** An instruction originally offered by defendant and upon reviewing it the court modified it, such instruction then became the court's instruction and not the defendant's, and defendant could justly complain of it.

6. ———: **Instruction on Issue of Insanity: Conflict: Prejudicially Erroneous.** In an action by a bank against an administrator on promissory notes bearing the signature of deceased, signed by his son, and alleged to have been ratified by deceased, in which the defendant interposed the defense of insanity, an instruction which told the jury that if at the time of the execution of the notes, and at all times thereafter, deceased was of unsound mind and incapable of transacting ordinary business, their verdict should be for defendant, unless deceased consented to the execution of the notes, or unless the execution of said note was made with the consent of the deceased, *held* prejudicially erroneous, one part of the instruction being in conflict with the other.

7. ———: **Refusal to Give Instruction Covered by Given Instruction: Not Error.** Defendant's requested instruction was properly refused where the substance of it was covered by his other instruction which the court gave.

8. ———: **Not Based on Evidence: Properly Refused.** An instruction regarding the finding that deceased had promised to pay other notes which had been signed by his son by affixing the name of deceased without authority, *held* properly refused, as not based on the evidence.

Appeal from the Circuit Court of Ralls County.—*Hon. Charles T. Hays*, Judge.

REVERSED AND REMANDED.

*J. H. Whitecotton, E. T. Fuller* and *J. F. Barry* for appellant.

(1)   A demand must be exhibited to the administrator or notice given of the intention to present the same within one year beginning on the day letters are granted, when notice of the grant of letters is given ten days thereafter or the same is barred by the Special Statute of Limitations, and for that reason, defendant's objection to the introduction of any testimony under the pleadings and the statement of plaintiff's counsel, and the admissions made of record, should have been sustained, and further, for the same reasons, defendant's demurrers asked at the close of plaintiff's case in chief and at the close of all the testimony should have been given as asked.  Sections 181, 182, 229, 7058, 1316, 1311, 1317, 1318, 1319, 525, 527, and 538, R. S. 1919; City of St. Louis to use of Powell v. Bambrick, 41 Mo. App. 650; State ex rel. v. Gasconade Co. Court, 33 Mo. 102; Pacific Mutual Life Ins. Co. v. Alsop, 134 N. E. 291; People ex rel. Blachly v. Coffin, 279 Ill. 401; Irving v. Irving, 209 Ill. App. 318; Taylor v. Brown, 147 U. S. 640; 4 Words & Phrases (2 Ed.), p. 7463.   (2) Witnesses Alva Jordan, James Dooley, Russell Dooley and Arnold Dooley were incompetent to testify as to statements made by James Curtiss, deceased, subsequent to the signing of the notes sued tending to prove ratification of the signing of the notes by Richard Curtiss, and defendant's objections to this testimony should have been sustained.  Sec. 5410, R. S. 1919; Banking House v. Rood, 132 Mo. 256; Rector v. Goode, 249 S. W. 901; Weiermiller v. Schullin, 203 Mo. 466; Griffin v. Nicholas, 244 Mo. 275; Edmonds v. Scharff, 279 Mo. 78.   (3)   Instructions which ignore or exclude issues or defenses from the consideration of the jury are erroneous where there is any evidence which would warrant sufficiently thereto to the jury, and it was therefore error in the court to give instruction 1, which excluded the issue made by the testimony of the unsoundness of mind of the deceased, James Curtiss. 38 Cyc., 1632; McQuillin's Instructions to Juries, p. 51, sec. 71; Toncrey v. Railroad, 129 Mo. App. 599; Herman Duke et al. v. Hospital, 266 Mo. 1; Scanlan v. Gulick, 199 Mo. 499; Beggs v. Shelton, 173 Mo. App. 127;

Borden v. The Falk Co., 97 Mo. App. 566; Drum-Flato Com. Co. v. Bank, 107 Mo. App. 432. (4) The court erred in refusing to grant defendant a new trial on account of the errors complained of and especially because of the giving of Instruction No. 1, and refusing to give instructions asked by the defendant. Sec. 1453, R. S. 1919; Holwerson v. Railway, 157 Mo. 216; Barton v. Odessa, 109 Mo. App. 76. (5) Instruction No. 1, in the nature of a demurrer, asked by defendant, at the close of all the evidence, should have been given, for the reason that the testimony all shows that the claim was barred by the Special Statute of Limitations. And instruction No. 2 properly declared the law as to the Special Statute of Limitations as to claims against an estate and should have been given, even though instruction No. 1, the demurred, was refused. Instruction No. 6 should have been given for the reason that there was no substantial evidence that was competent that showed that there was a ratification of the execution of the note sued on. Instruction No. 7 also should have been given and the refusal to give the same was error and prejudicial to defendant's rights. Also Instruction No. 4, refused as asked, and given as modified, improperly and erroneously conditioned the right of the defendant to a recovery in this case under the testimony.

*James P. Boyd* for respondent.

DAVIS, C.—This is an action, originating in the probate court of Monroe county, on a demand on two promissory notes. The cause was appealed to the circuit court of Monroe county, and, on change of venue, transferred to the circuit court of Ralls county, where, upon trial, the jury returned a verdict for $4398.83 in favor of plaintiff, and from the judgment entered thereon defendant appealed.

The evidence tends to show that James Curtiss died on March 28, 1920, in Monroe county, where he had resided for a number of years. On the 26th of April, 1920,

letters of administration on his estate were granted to
Jerry Curtiss; the first notice, of such appointment and
letters, was published within ten days thereafter, to-wit,
on April 30, 1920. The demand, on the two notes, was,
on April 26, 1921, served on defendant, and filed in the
probate court of Monroe county.

The testimony further tends to show that James
Curtiss and his son Richard Curtiss were partners in the
farming business, in Monroe county, some ten or twelve
years prior to the fall of 1914, when the partnership was
terminated, of which partnership, and the termination
thereof, plaintiff had knowledge. During the partner-
ship both James Curtiss and Richard Curtiss borrowed
money from the plaintiff bank, usually giving one note
for the loan obtained, which at times was signed by James
Curtiss with his mark, he being unable to read or write,
and by Richard Curtiss. At other times Richard Curtiss
signed the name of his father, James Curtiss, and his
own name to the note, concerning which notes James
Curtiss, upon coming to the bank, would make inquiry, de-
siring to know upon what notes, and the amount thereof,
he was liable. The officers of the bank would show him
the notes to which his name had been signed by Richard
Curtiss, and the evidence runs to the effect that he ap-
proved of the action of Richard Curtiss in signing his,
James Curtiss, name to the notes. After the dissolution
of the partnership, Richard continued to live with his
father upon the farm, continuing in the business of feed-
ing cattle, hogs and mules. During the partnership, re-
lative to money borrowed from the bank by James Cur-
tiss, the note would be signed above by the name of
James Curtiss,' with Richard's name underneath; rela-
tive to the money Richard borrowed, his name would ap-
pear above and James Curtiss below.' The note dated
September 22, 1919, for $3247.93, the names of Richard
Curtiss and James Curtiss being signed thereto by
Richard Curtiss for money by him borrowed, is shown to
be a renewal of a note signed for money loaned. The

$1000 note, signed in the same way and for the same purpose, was given in renewal of a number of notes.

Alva C. Jordan, assistant cashier of plaintiff testified: That James Curtiss told Mr. Dooley, an officer of plaintiff, that if Richard came in there in his absence and wanted money to let him have it and use his name, sign his name; that on November 22, 1919, James Curtiss, while in the bank, looked over these two notes and said they were all right.

Russell Dooley, former assistant cashier of plaintiff, testified: That James Curtiss told his father, James H. Dooley, in his presence, and in Mr. Jordan's presence, that any time Richard needed money, it was all right for him to sign his name to the note, that he would back him and take care of them; it would be all right to sign James Curtiss' name.

James H. Dooley, cashier of plaintiff, testified: That James Curtiss said Richard Curtiss would sign his name to the notes and it would be all right with him, that he expected to back him up in this business. After this, Richard Curtiss borrowed money from us at different times and signed his father's name to the notes. That he heard a conversation in reference to the two notes sued on after they were signed and after the bank had possession of them. He thinks that James Curtiss was present when Richard Curtiss signed the $3247.98 note. That frequently Mr. Curtiss would come in and ask about the notes.

Arnold Dooley testified: That he worked for plaintiff at different times. He heard James Curtiss tell Mr. Jordan that it was all right for Richard to sign his name, James Curtiss, to the paper; that James Curtiss would come in the bank, call for the notes, look over them and say, "They are all right."

The defendant's evidence tends to show that from the year 1917 until his death, James Curtiss was of unsound mind and incapable of transacting business. Although the evidence shows that plaintiff was from eighty-five to ninety years of age, probably ninety, yet plaintiff's evi-

dence, through James Curtiss' family physician tends to show that, to within a few days of his death, he was of sound mind. Plaintiff's evidence further tends to show that he transacted some business after 1917, sold and conveyed land by warranty deed, renewed loans on his farm, and paid money on the loans.

I. Defendant assigns as error the overruling of his objection to the introduction of any testimony, the refusal to give his instruction in the nature of a demurrer to the evidence, the overruling of his motion in arrest of judgment, and his instruction No. 2 offered and refused. As these instructions all relate to the Statute of Limitations found in section 182, Revised Statutes 1919, we will consider them together. The following sections of the Revised Statutes of Missouri, 1919, relating to the time in which claims may be filed against the decedent's estate, so far as here pertinent, are as follows:

"Sec. 181. All demands against the estate of any deceased person shall be divided into the following classes: . . . VI. All demands thus exhibited after the end of six months and within one year after the date of the granting of the first letters on the estate.

"Sec. 182. All demands not thus exhibited in one year shall be forever barred, saving to infants, persons of unsound mind or imprisoned, and married women one year after the removal of their disability, and said one year shall begin to run from the date of the granting of the first letters on the estate where notice shall be published, the first insertion within ten days after letters are granted; and in all other cases said one year shall begin to run from the date of the first insertion of the publication of the said notice."

Section 7058, relating to the construction of statutes, is in part as follows:

"The construction of all statutes of this State shall be by the following additional rules, unless such construction be plainly repugnant to the intent of the Legislature, or the context of the same statute: . . . ;

third, the word 'month' shall mean a calendar month, and the word 'year' shall mean a calendar year, unless otherwise expressed, and the word 'year' be equivalent to the words 'year of our Lord;' fourth, the time within which an act is to be done shall be computed by excluding the first day and including the last, if the last day be Sunday it shall be excluded.''

The first notice of publication having been made within ten days, defendant asserts that the filing of the claim in the probate court on April 26, 1921, was not, within the meaning of the statute, filed within the time allotted by section 182. Defendant contends that the words ''said one year shall begin to run from the date of the granting of the first letters on the estate,'' must be construed as including the day of the granting of the letters and as excluding April 26, 1921, the day on which plaintiff's demand was filed in the probate court, the year thereby ending on April 25, 1921. The decisions relating to the construction of statutes computing time are not in harmony. Their tendency is to give that construction to a statute which will prevent a forfeiture.

In Taylor v. Brown, 147 U. S. 640, 37 L. Ed. 313, discussing this question, the Court says: ''While it is desirable that there should be a fixed and certain rule upon the subject, it must be conceded that the rule which excludes the *terminus a quo* is not absolute, but that it may be included when necessary to give effect to the obvious intention.''

In State ex rel. v. Gasconade Co. Ct., 33 Mo. 102, it is held: In the computation of time it is laid down generally, that where the computation is to be made from an act done, the day when such act was done is included. But it will be excluded whenever such exclusion will prevent a forfeiture.

In City of St. Louis, etc., v. Bambrick, 41 Mo. App. 648, l. c. 650, referring to what is now section 7058, supra, it is said: ''We are of the opinion that this statute is intended to furnish a general rule, plain and comprehensible, for the computation of the time mentioned in all

statutes, unless the terms used therein make such construction inadmissible.''

In determining the intention of the law-making body with respect to the words in section 182, that ''said one year shall begin to run from the date of the granting of the first letters on the estate,'' they are to be considered with the first sentence in section 182, that ''All demands not thus exhibited in one year shall be forever barred,'' and that provision of the sixth clause of section 181, supra, relating to demands ''exhibited after the end of six months and within one year after the date of the granting of the first letters on the estate.'' We think the Legislature intended that section 182 should be interpreted according to the rule enunciated in section 7058, to the effect, that the time within which an act is to be done shall be computed by excluding the first day and including the last.

In Kimm v. Osgood, 19 Mo. 60, construing a similar statute on the same subject, the court thought that the first day was excluded and the last day included. In Allen v. Elliott, 67 Ala. 432, the same result was reached.

In 26 R. C. L., pages 740 and 741, it is said: ''Generally speaking, however, 'from' is a term of exclusion, and when a period of time is to be reckoned from a certain day, unless there is something in the context or the circumstances to indicate a different intention, the day from which the time is to be reckoned shall be excluded from the computation and from the period. This rule is apparently based on the desire to avoid forfeitures and give the utmost permissible indulgence to persons required to act within a limited time from a specified day or act. . . . And the general rule now is that in computing time, whether from the date or the day of the date, or from a certain act or event, the day of the date or event is to be excluded. Under both rules, in order to avoid the effect of an estoppel or to save a forfeiture the day on which the act is done will in the computation of time from the doing of such act be excluded.'' [See also Ann. Cas.

1918A, 925; 49 L. R. A. 194, 196, 200; 15 L. R. A. (N. S.) 686; 38 L. R. A. (N. S.) 1161, 15 Ann. Cas. 27.]

It is argued for defendant that since the demand could have been filed on the day of the granting of the letters, that day must be included in the computation of time. But we think that this does not follow, and it is so held in: McCann v. Pennie, 100 Cal. 547, 35 Pac. 158; Field v. Field, 77 N. Y. 294. We are of the opinion that, where letters were granted on April 26, 1920, and the demand was filed on April 26, 1921, the claim is not barred by limitation, and that plaintiff filed its demand within the period prescribed by the statute.

II. Defendant asserts that the court erred in admitting the testimony of the officers and agents of plaintiff, because the other party to the contract, to-wit, James Curtiss, was dead. The officers, agents and employees of defendant were not interested in the result of the suit within the meaning of the statute, for they were persons distinct from the corporation that asserts this claim. Even at common law where the interested parties were disqualified from testifying, it was held that the agents and servants were not disqualified. Our enabling statute has not laid down a different rule. It is only those interested in the result of the suit, within the meaning of the statute, who are disqualified upon the decease of the other party. [Wagner v. Binder, 187 S. W. 1128; Curtis v. Alexander, 257 S. W. 432; Massey v. Butts, 204 Mo. App. 55, 221 S. W. 153; Allen v. Jessup, 192 S. W. 720; Lafferty's Admr. v. K. C. Casualty Co., 209 S. W. 942.] Rector v. Goodloe, 249 S. W. 897, l. c. 901, and the other cases cited by defendant are not in point. In Rector v. Goodloe, supra, the court excluded the testimony of plaintiff's witness, her brother, because he was an original party to the alleged contract and the other party was dead; he was as vitally interested in effecting its establishment as was the plaintiff in the case, for thereby he would relieve himself and his property of all claims on her part at the expense of his brother's estate. The case of Banking House v. Rood, 132 Mo. 256, 33 S. W. 816,

referred to therein, was expressly overruled in Wagner v. Binder, 187 S. W. 1128. We do not consider Rector v. Goodloe, supra, as overruling or affecting the rule laid down in Wagner v. Binder, supra.

III. Defendant complains of the giving of plaintiff's instruction No. 1, and the court's instruction No. 4, as well as of the court's refusal to give defendant's instructions No. 6 and No. 7. We think it expedient to consider them together. Plaintiff's instruction No. 1 reads:

"The court instructs the jury that if you find from the evidence in the cause that the two notes in question and constituting the basis of the claim of plaintiff bank against the estate of James Curtiss were executed by Richard Curtiss and that said Richard Curtiss signed to said notes the name of James Curtiss, and if the jury further find from the evidence that at any time prior to the execution, if any, of said notes and subsequent to the close of the partnership between James Curtiss and Richard Curtiss said James Curtiss had informed and told the officers of plaintiff bank that his son, Richard Curtiss, had the consent of said James Curtiss, to so sign said James Curtiss' name to notes to said bank, and if you further find that said James Curtiss did not, any time prior to the execution of the notes in question, give to plaintiff bank, or its officers, any different instructions as to the right or authority of said Richard Curtiss to sign said James Curtiss' name to notes, if so the jury find, then the jury shall find the issues for the plaintiff."

The court's instruction No. 4 reads: "The court instructs the jury that if you find from the evidence in the cause that James Curtiss, deceased, at the time of the execution of the notes by Richard Curtiss and sued on in this case, was at all times thereafter a person of unsound mind and incapable of transacting ordinary business, your verdict should be for the defendant on the issue of ratification of the execution of said instruments by James Curtiss, and your verdict should be for the defendant unless you further find that the execution of said note was made with the consent of said James Curtiss."

The court refused to give the instruction as written, but modified same by adding the words at the end thereof, "or unless the jury further finds that said James Curtiss had prior to the execution by said Richard Curtiss of the two notes sued upon in this case, and subsequent to the close of the partnership between James Curtiss and Richard Curtiss, informed and told the officers of plaintiff bank that his son, Richard Curtiss, had the consent of said James Curtiss to so sign James Curtiss' name to notes of said bank."

Instruction No. 6 for defendant, which the court refused, is as follows:

"The court instructs the jury that unless you find and believe from the evidence in the cause that Richard Curtiss at the time of the signing and execution of the instrument or instruments sued on in this cause had authority or consent to sign James Curtiss' name to the identical instrument or instruments, you cannot find for the plaintiff, and your verdict must be for the defendant estate."

Defendant's instruction No. 7, which the court refused, reads:

"The court instructs the jury that unless you find from the evidence in the cause that Richard Curtiss at the time of the execution of the note sued on in this cause, had authority from James Curtiss to sign the name of James Curtiss to the same, your verdict should be for the defendant, although you may further find that said James Curtiss had promised to pay other notes which had been signed by said Richard Curtiss by affixing the name of said James Curtiss without the authority of said James Curtiss, unless you further find from the testimony that said James Curtiss ratified the same by knowingly consenting to the execution thereof."

(a) Reverting to plaintiff's instruction No. 1, we find that it failed to submit to the jury the hypothesis of James Curtiss' insanity at the time of the execution of the notes by Richard Curtiss and at the time of his alleged ratification of them, in accordance with the issues tender-

ed by defendant's evidence. This instruction, purporting to cover the whole case and directing a verdict, completely ignored the issue of insanity raised by defendant's evidence; it was error, unless proper instructions, covering the defense of insanity, on behalf of defendant, cured the defect tendered by that issue. [State ex rel. v. Trimble, 291 Mo. 227, 236 S. W. 651.] Defendant's evidence tends to establish that James Curtiss' mind became unsound during 1917, so that he was unable to transact ordinary business, the incapacity continuing until his death, on March 28, 1920; that at the time Richard Curtiss signed James Curtiss' name to the notes sued on, to-wit, the note for $3247.98, dated September 22, 1919, and the note for $1000 dated October 20, 1919; and that at the time he signed his father's name to the notes for which the above two notes were given in renewal; and that at the time of the alleged ratification on or about November 22, 1919, James Curtiss was, at the above times, of unsound mind. Referring to the instructions given on behalf of the defense, we are of the opinion that they did not fully and sufficiently cover the defense of insanity so as to cure the defect or omission in plaintiff's instruction No. 1. The omission constituted error.

(b)   The first part of instruction No. 4 was originally offered by defendant; but, upon reviewing it, the court modified it. It then became the court's instruction, not defendant's (Maxey v. Railway, 95 Mo. App. 303; Humpert v. Wells, 253 S. W. 60; Peters v. Railway, 204 Mo. App. 197, 224 S. W. 25), and defendant may justly complain of it. The forepart of the instruction, in effect, tells the jury that if, at the time of the execution of the notes and at all times thereafter James Curtiss was of unsound mind and incapable of transacting ordinary business, their verdict should be for defendant, unless James Curtiss (whether sane or insane) consented to the execution of the notes, or unless James Curtiss (whether sane or insane) prior to the execution of the notes, etc. One part of the instruction is in conflict with the other. It was prejudicial error to let the instruction go to the jury.

(c) Defendant's instruction No. 6 was properly refused. The substance of this instruction was covered by defendant's instruction No. 5, which the court gave to the jury.

(d) Defendant's instruction No. 7 is covered by defendant's instruction No. 5 given to the jury, with the exception of that part reading: "although you may further find that said James Curtiss had promised to pay other notes which had been signed by Richard Curtiss by affixing the name of said James Curtiss without the authority of said James Curtiss." We do not think this instruction is based on the evidence. Even Richard Curtiss, witness for defendant, testified that he continued signing his father's name to the notes just like he had been doing, and his evidence shows that part of the time he signed his father's name to the notes in his father's presence. The evidence does not warrant the assumption that Richard Curtiss signed James Curtiss' name to other notes without his, James Curtiss', authority. This instruction was properly refused.

The Commissioner recommends that the judgment be reversed and remanded for the reasons stated.

PER CURIAM:—The foregoing opinion of DAVIS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and remanded for the reasons stated by the Commissioner. *Allen, P. J., Becker* and *Daues, JJ.,* concur.