[Civ. No. 9658. First Appellate District, Division One.—May 28, 1936.]

LAURA GROAT, Special Administratrix, etc., Respondent, v. WALKUP DRAYAGE & WAREHOUSE COMPANY (a Corporation) et al., Appellants.

352

Redman, Alexander & Bacon and Herbert Chamberlin for Appellants.

Conrad Louis Gardner and Philander B. Beadle for Respondent.

GRAY, J., *pro tem.*—A White auto-truck, owned by Walkup Drayage & Warehouse Company and then being operated by its employee, Harold Rumsey, easterly on Broadway, in the city and county of San Francisco, struck the right side of a Chevrolet sedan automobile, then being driven southerly on Sansome Street by its owner, Charles F. Groat. In an action, brought by the latter against the former, to recover damages for injuries suffered as a result of the collision, the jury awarded the latter the sum of $12,500. The owner and operator of the truck appealed from the judgment, entered on the verdict, assigning as error (1) the giving and refusal of instructions; (2) the admission and exclusion of evidence, and (3) excessive damages. Charles F. Groat having died pending the appeal, the special administratrix of his estate was substituted as respondent. For convenience Groat will be referred to as respondent.

Appellants argue that an instruction on the doctrine of sudden peril should not have been given because, as they claim, there is no evidence that respondent was induced to do anything in the operation of his automobile by actual or seemingly sudden peril or imminent danger. According to their summary of the evidence, each driver merely testified that he entered the intersection first and that the other attempted unlawfully to usurp the right of way. Such testimony discloses no more than the ordinary and usual hazards which arise when two vehicles, traveling at an angle to each other, attempt to use the same part of the intersection at the same time, but utterly fails to picture a sudden emergency facing either driver. ■ In absence of any evidence disclosing a situation of sudden peril, the doctrine is not applicable and the giving of an instruction stating the doctrine would be erroneous. (*Vedder* v. *Bireley*, 92 Cal. App. 52 [267 Pac. 724]; *Musante* v. *Guerrini*, 125 Cal. App. 556 [13 Pac. (2d) 965].) But the following additional testimony of respondent

shows that he was confronted with a sudden emergency and was therefore entitled to have the jury advised as to the amount of care he was required to exercise while acting under its stress. (*Taylor* v. *Lowenstein*, 113 Cal. App. 665 [298 Pac. 847].) He testified that, before entering the intersection, he decreased his speed to 10 or 12 miles per hour upon seeing an eastbound street car on Broadway, stopped, with its front end even with the westerly curb of Sansome Street, and discharging passengers; that, at the motorman's signal, he proceeded in front of the street car, saw appellants' truck traveling behind the street car, and anticipated it would also stop; that momentarily he took his eyes off the truck; that when he next looked, the truck had passed to the south of the standing street car and was coming towards him at a speed of 30 to 35 miles per hour; that he then unsuccessfully attempted to avoid the collision by increasing his speed; and that, when struck, the rear end of his automobile was about two feet southerly of the street car and its front end beyond the southern curb of Broadway.

■ In effect, the instruction told the jury that the doctrine of sudden peril could not be applied to the conduct of either driver, unless such driver was not guilty of negligence proximately causing or proximately contributing to the collision. Appellants claim that the qualification should have required merely that such driver was not negligent, and that it was erroneous to include the further requirement that such negligence should not be a proximate cause of the collision. The negligence of a party which will deny him the benefit of the doctrine is such as causes or contributes to the creation of the perilous situation. (*Brooks* v. *City of Monterey*, 106 Cal. App. 649 [290 Pac. 540]; *Dodds* v. *Gifford*, 127 Cal. App. 629 [16 Pac. (2d) 279]; *Wagy* v. *Brave*, 133 Cal. App. 413 [24 Pac. (2d) 209]; *Nitta* v. *Haslam*, 138 Cal. App. 736 [33 Pac. (2d) 678].) Under the present facts, the perilous situation which confronted each driver was the collision. So understood, the instruction was correct.

■ In its charge to the jury, the court read section 131 (a) of the California Vehicle Act as amended in 1931. It also instructed the jury that the driver of the car which first entered the intersection, in absence of reason to believe otherwise, had the right to assume that the right of way would be accorded him, and that, while proceeding lawfully

and using ordinary care in the exercise of the right of way, he was justified in assuming the other driver would yield the right of way and, if necessary, slow down or stop. Appellants claim the instruction erroneously omitted the qualification that a driver, in order to obtain the right of way, must be traveling at a lawful speed. Such qualification formerly found in the section was eliminated in its revision in 1931. In other instructions the jury was fully advised as to the care required of each driver, and particularly as to section 113 of the California Vehicle Act. Of course, a driver cannot acquire the right of way by means of negligence in approaching or entering the intersection. (Note, 89 A. L. R. 838.)

After reading several sections of the California Vehicle Act of 1931, including subdivisions "a", "b (3)" and "d" of section 113, the court told the jury that any violation of such provisions, except those of section 113 relating to speed, was negligence as a matter of law, but that a violation of such speed provisions presented a question of fact as to whether it was negligence. Appellants correctly state that subdivision "d", by its express terms, does not qualify subdivision "a" and that therefore a violation of the latter is negligence as a matter of law. But they fallaciously argue that the instruction told the jury to the contrary. While it is true that subdivision "a" in requiring operation "at a careful and prudent speed" does relate to speed, yet, if reasonably construed, the instruction refers only to the rates of speed specified in subdivision "b". Any chance that the jury could have misconstrued the court's meaning was entirely removed by the clarity of other instructions upon the same matter. The court properly refused to give appellants' proposed instruction on the doctrine of unavoidable accident, since such issue was not presented by either the pleadings or the evidence. (*Metcalfe* v. *Pacific Electric Ry. Co.*, 63 Cal. App. 331 [218 Pac. 486]; *Riley* v. *Berkeley Motors Inc.*, 1 Cal. App. (2d) 217 [36 Pac. (2d) 398].) The case was tried upon the theory of each party, supported by his evidence, that the collision was caused entirely by the other's negligence.

At the time of the accident respondent was 58 years of age and had been a member of the San Francisco police department for 32 years and a police sergeant for 11 years. He received no visible physical injuries in the collision but,

immediately thereafter, appeared pale, nervous, excited, angry and vociferous. He worked at his regular police duties on the next eight days, although during this time his wife and associates noticed that he was pale, nervous and apparently sick. On the ninth day he drove his sedan over the Santa Cruz Mountains to Capitola, for a rest. During that and the succeeding night he was unable to sleep and suffered from gastro-intestinal disturbances. His condition becoming worse, his son drove him home the next day. Unable to reach his regular physician, he called in a neighborhood doctor, who found him in a critical condition, suffering from congestive heart failure or cardiac decompensation. This condition, not improving under medical treatment, permanently disabled him for physical activities and prevented him from thereafter performing his police work.

Respondent introduced in evidence a record of the police department, showing his sick leaves of 319 days in a period of 22½ years prior to the accident, the nature of each sickness and the name of the attending physician. The only entries of present significance are those showing an absence of 97 days in the seventh year before the accident, on account of nephritis, and an absence of 123 days in the fourth year due to arteriosclerosis. ■ Upon the theory that they formed part of such record, and were therefore admissible under section 1854 of the Code of Civil Procedure, appellants offered written statements of attending physicians as to the nature of respondent's various sicknesses. The court sustained respondent's objection thereto that they were hearsay. Ten of such statements supplied the information appearing in such record and add nothing to what there appears. In two other statements, not referred to in such record, the departmental physician reported, respectively four and five years before the accident, that respondent had had high blood pressure and a diseased heart for several years. But since this physician testified on behalf of appellants, fully as to the same matters, the error, if any, was harmless. (*Longuy* v. *La Societe Francaise, etc.*, 52 Cal. App. 370 [198 Pac. 1011].)

■ It is undisputed that, for a number of years before the accident, respondent had high blood pressure, hardening of the arteries and diseased kidneys and heart; that, nevertheless, he was on active duty as a police officer, and that, ten

days after the accident, he was stricken with an acute congestive heart failure. Medical testimony produced by respondent is sufficient to support his theory that the shock of the collision was a proximate cause of his heart failure by its aggravation of his previous condition. Likewise, the medical evidence of appellants sufficiently supports their claim that such failure was but the natural and ordinary development of his preexisting ailments. The jury's decision on this conflict cannot be here disturbed. (*Shaw* v. *Owl Drug Co.*, 4 Cal. App. (2d) 191 [40 Pac. (2d) 588].) ▆ However, appellants claim that the court erred in permitting a physician, who had examined respondent solely for the purpose of testifying, to narrate respondent's declarations to him that he had been an athlete in his younger years, had always been a well man, so far as he knew, and that, four or five years before, a police surgeon, in a routine examination, had found his blood pressure pretty high. Before admitting such testimony, the court, on its own motion, told the jurors that such statements were made to the doctor to enable him to make his diagnosis and admonished them not to consider such statements as evidence of the facts stated. Appellants argue in favor of the rule in other jurisdictions, which, distinguishing between history told an attending physician for purpose of treatment and that given an expert solely for purpose of testifying, hold the former admissible and the latter inadmissible. (See 8 R. C. L. 639.) No such distinction has been made in this state. ▆ "Declarations and statements, made to an examining expert by an injured party, of previous condition and past suffering, when declared by the expert to be necessary to enable him to form an opinion as to the nature and extent of disease or injury, and when such statements constitute in part the basis upon which the opinion of the expert is based, are admissible, not for the purpose of establishing the truth of the statements but to serve as a basis for the medical opinion the expert is about to give. (*People* v. *Shattuck*, 109 Cal. 673 [42 Pac. 315]; *Davis* v. *Renton*, 113 Cal. App. 561 [298 Pac. 834]; *Rohner* v. *Cross*, 121 Cal. App. 667 [9 Pac. (2d) 509].)" *Willoughby* v. *Zylstra*, 5 Cal. App. (2d) 297, 300 [42 Pac. (2d) 685].) The rule in this state is in accord with the majority rule. (67 A. L. R. 10, 18; 80 A. L. R. 1527, 1528.)

358

■ Under section 166 of the city charter, respondent, at the age of 62 years, would have been entitled to retire upon a monthly pension, payable for life, equal to one-half of the monthly salary of a sergeant. In lieu of such pension, he could have elected to receive its actuarial equivalent, partly in pension for life and partly in other benefits, payable to others after his death, subject, however, to conditions prescribed by the board of supervisors. This right to a future pension formed part of his compensation of employment. (*O'Dea* v. *Cook*, 176 Cal. 659 [169 Pac. 366]; *Aitken* v. *Roche*, 48 Cal. App. 753 [192 Pac. 464]; *Douglas* v. *Pension Board*, 75 Cal. App. 335 [242 Pac. 756]; *Klench* v. *Board of Pension Fund Commrs.*, 79 Cal. App. 171 [249 Pac. 46].) Although at the time of the accident the accrual of respondent's right to a pension was contingent upon his further service for four years, and the amount that he would receive depended upon his subsequent length of life, yet he then had a present existing right to fulfill these contingencies, and any interference with his ability so to do constituted an invasion of such right. This right to mature a pension is somewhat analogous to the right of a person to work and earn in the future. Loss of future earning capacity has always been considered a proper element of damages. (*Bonneau* v. *North Shore R. R. Co.*, 152 Cal. 406 [93 Pac. 106, 125 Am. St. Rep. 68]; *Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237 [116 Pac. 513].) Respondent's loss of a future pension because his injuries terminated his employment four years before his right to a pension accrued was therefore a proper element of damages.

■ Appellants contend that respondent's physical condition was so bad that it was problematical whether he would have lived to enjoy such pension and therefore his right thereto is too remote and speculative to warrant consideration. The opinions of the opposing medical experts as to the probable effect of respondent's preexisting ailments upon the length of his remaining life are conflicting. The jury evidently accepted the opinions of respondent's physicians that he could, with care and treatment of such ailments, have lived to enjoy a pension for a considerable number of years. Under the evidence, whether, but for the accident, the pension would have accrued and the length of time it would have been received, presented question of facts for the jury's

decision. To assist the jury in fixing the present value of such future pension, the court admitted in evidence mortality tables showing the life expectancy of a man aged 58 years in average or ordinary health to be 15.39 years, and allowed an actuary, employed by the San Francisco City and County Employees' Retirement System, to testify that the present value of a sergeant's pension based upon such expectancy was $12,500. Appellants objected to this evidence, because respondent was not in average or ordinary health. The tables were admissible, although the evidence showed that respondent was suffering from ailments which probably would shorten his life to less than that of a person in average or ordinary health. (19 R. C. L. 217; 17 C. J. 875.) The objection which goes to use of the tables, not their admissibility, was correctly handled in the instructions. The court told the jury that the tables did not establish the length of time any particular person of a given age would live but tended merely to show the ordinary experience as to a person of the age named in ordinary or average health. It further instructed the jury that "in estimating the probable length of a particular man's life, as compared with the average duration of life of a person of the same age, the individual's state of health, occupation, habits and surroundings as disclosed by the evidence, must be taken into account; and the reasonable and proper weight is to be given to all such elements in fixing that person's expectancy, and either increasing or decreasing, according to the facts and circumstances of the particular case, the figures set out in the tables for the average person of the same age".

 The verdict is in the same amount as the actuary fixed for the present value of a sergeant's pension, based upon the life expectancy of a person in ordinary or average health. From this coincidence, appellants argue that the verdict is excessive, because respondent's physical condition decreased his expectancy to less than that of a person in ordinary or average health. But other elements entered into the amount of the verdict. It is undisputed that respondent incurred liability for physicians' services in the sum of $500, for nurse hire in the sum of $728, and for repairs to his automobile in the sum of $20. He suffered a loss in earning capacity because his injuries prevented him from continuing to work as a police sergeant at a salary of $220 per month.

He was also entitled to an allowance for past and future pain and suffering. The evidence discloses that he was confined to bed at home for two months, attended by two nurses for four weeks and by one nurse for three weeks; that he was kept alive by taking digitalis and coramin, and that he was unable to exert physically to any extent. Considering all these factors, it does not appear that the verdict its excessive.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 27, 1936, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 27, 1936.