[Civ. No. 14930. Second Dist., Div. Three. Feb. 1, 1946.]

BETTY CAROL EMERY, as Administratrix etc., Appellant, v. SOUTHERN CALIFORNIA GAS COMPANY (a Corporation) et al., Respondents.

Kenneth Sperry for Appellant.

Crider, Runkle & Tilson for Respondents.

WOOD, J.—The verdict of the jury, in this action for damages for wrongful death, was for plaintiff in the sum of $12,000, and judgment was entered in accordance with the verdict. Plaintiff appeals from that portion of the judg-

ment "which assesses, fixes and limits the damages and the amount payable to the plaintiff."

Appellant contends that: (1) The trial court erred in refusing to receive the testimony of an actuary, and to receive annuity tables in evidence, in respect to the present value of the future loss of support sustained by the heirs of the deceased; and (2) the damages awarded were grossly inadequate in view of the undisputed evidence as to decedent's earning capacity and loss of support sustained by his heirs.

Edwin Paul Emery, the deceased, was employed at the time of his death by the Consolidated Steel Corporation as a pipefitter. On September 16, 1943, in the course of such employment, he was removing a gasket from a hydraulic pressure pipeline in a butadiene plant, owned and operated by defendants Southern California Gas Company and Rubber Reserve Company. While he was performing that work at a place about 16 feet above a cement floor, a large quantity of water, which was expelled from the pipe under high pressure, blew him to the floor and killed him.

Plaintiff is the widow of the deceased and brings this action as administratrix of his estate. Deceased was survived by a daughter, 7 years of age, and 2 sons, 16 and 18 years of age. He had worked for Consolidated Steel Corporation approximately 7 weeks preceding his death and his monthly salary was approximately $600. Prior to that period of employment, he was employed by the California Shipbuilding Corporation, where his salary was between $300 and $400 per month. Prior to that last mentioned employment he worked for a refinery about 10 years, starting with a salary of approximately $160 per month, and receiving increases in salary until the amount thereof was between $250 and $300 per month. He deposited his salary checks in a joint checking account with his wife, from which account their living expenses, insurance premiums, and payments on their home were paid.

The evidence shows that deceased was a good husband and an affectionate father. Plaintiff and deceased had been married approximately 8 years at the time of his death, and the daughter was the only issue of that marriage. His two sons were the issue of a former marriage. After plaintiff and deceased were married, the two sons resided with them about one-half of the time, and the remainder of the time they resided in a boarding home, or with their grandmother, or

with their mother, who had remarried. When they lived apart from plaintiff and deceased, the deceased contributed to their support each month. The funeral expenses were $595.44. At the time of his death deceased was 39 years of age, was in good health and very active. He had a life expectancy of 28.90 years, according to the American Table of Mortality.

At the trial, counsel for plaintiff called an actuary as a witness and asked him as follows: ''Are you able to state at this time what amount of money it would take, if invested at a given rate of interest, would yield a particular monthly return for a period of a specific number of years and all be used up at the end of that period? '' Counsel for defendants objected to the question, stating ''it is incompetent, irrelevant and immaterial'' and ''is not the measure of damage.'' The judge and the attorneys for plaintiff and defendants then went to the judge's chambers in order to discuss the objection out of the presence of the jury. In chambers, counsel for defendants stated that he amended his objection ''by adding that any such computation on the part of such actuary would not in any manner determine the measure of damage,'' and ''it would call for a conclusion of the witness.'' He also said that he was not objecting to the qualifications of the witness as an actuary. Counsel for plaintiff argued that such testimony was offered to assist the jury in determining the present value of the future pecuniary loss sustained by the heirs; that the actuary, being an expert in his particular field, was able to testify as to certain facts and figures which were computations the jury could not make; that he expected to show, if permitted to further question the actuary, the amount of money which if invested at various rates of interest, namely, 3 per cent, 4 per cent, and 5 per cent, would yield a monthly income of various amounts, namely, $200, $300, and $400 over a period of 20 years, and over a period of 25 years, and all be used up at the end of those particular periods. He stated further that he had a chart which had been prepared by the actuary showing the present value of income payable each month for a period of 25 years with interest compounded annually at 3 per cent, 4 per cent, and 5 per cent, on monthly incomes of $200, $300, and $400. He also said that he had another such chart showing that kind of information for a period of 28.90 years, the life expectancy of deceased. He exhibited those charts to the judge and offered

them in evidence, but an objection was made to the offer. Counsel for defendants stated that he *"would have no objection to counsel* [for plaintiff] *using all of the computations and mathematical deductions he desires as a part of his argument to the jury, but when it comes to having the witness testify to such matters from the witness stand, it is bound to be misleading to the jury."* (Emphasis added.) The court sustained the objections to the proffered testimony and the charts.

Appellant contends as above stated, that the court erred in refusing to receive the testimony of the actuary, and in refusing to receive the charts in evidence. The objection to the question propounded to the actuary should not have been sustained. The annuity tables or charts should have been received in evidence, assuming that a proper foundation for their admissibility had been laid. When the damages to be awarded for wrongfully causing the death of a person are compensation to designated relatives for prospective pecuniary loss, the gross amount thereof should be reduced to its present worth. (16 Am.Jur. p. 138.) It was stated in the case of *Chesapeake & O. R. Co.* v. *Kelly,* 241 U.S. 485, at page 491 [36 S.Ct. 630, 60 L.Ed. 1117]: "[W]hen future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only. We are aware that it may be a difficult mathematical computation for the ordinary juryman to calculate interest on deferred payments, with annual rests, and reach a present cash value. Whether the difficulty should be met by *admitting the testimony of expert witnesses,* or by *receiving in evidence the standard interest and annuity tables in which present values are worked out* at various rates of interest and for various periods covering the ordinary expectations of life, it is not for us in this case to say. Like other questions of procedure and evidence, it is to be determined according to the law of the forum." (Italics added.) In the case of *Vicksburg & Meridian R. R. Co.* v. *Putnam,* 118 U.S. 545 [7 S.Ct. 1, 30 L.Ed. 257], in discussing the admissibility of standard annuity tables to show the present value of future loss of earnings, it was said at page 554: "In order to assist the jury in making such an estimate, standard life and annuity tables, showing at any age the probable duration of life, and the present value of a life annuity, are competent evidence. [Citations.]" It was stated in *Peters* v.

*Kansas City Rys. Co.*, (1920) 204 Mo.App. 197, at page 203 [224 S.W. 25] : "annuity tables, no matter where found, if properly established and authenticated, are admissible in evidence in personal injury cases where the injury is claimed to be permanent." In upholding the admissibility of standard annuity tables to show the present value of propective loss, it was said in *McNair* v. *Berger* (1932), 92 Mont. 441, at page 458 [15 P.2d 834] : "And the annuity tables which are a part of the mortality tables [citing cases] . . . are subject to the same rules of admissibility." In *Bruner* v. *McCarthy* (1943), 105 Utah 399 [142 P. 649], the court passed upon the admissibility of such evidence as was rejected by the trial court in the present case. In that case the court said, at page 415: "And last, defendants contend that it was error to admit Exhibit G in evidence. This exhibit was compiled by a witness who qualified as an expert. It was compiled from Annuity Tables by McKenzie. The tables themselves would have been admissible in evidence along with Mortality and Annuity Tables. The witness merely, from these tables, compiled various figures to show what amount of money it would be necessary to invest at various interest rates at the present time to pay an individual $1,200 per year, $1,800 per year, and $2,400 per year for thirty-five years. Since the various tables from which the witness took his data would have been admitted in evidence, we see no objection in having this witness prepare computations from these tables by way of summary. There is no contention that these figures so prepared were inaccurate or that the witness who prepared and explained them was not competent to do so." In the case of *Groat* v. *Walkup Drayage etc. Co.*, 14 Cal.App.2d 350 [58 P.2d 200], the action was for damages for personal injuries. Plaintiff therein, who was a police officer 58 years of age, would have been entitled to retire at the age of 62 upon a monthly pension, payable for life. Evidence was introduced in that case to show that plaintiff was on active duty as a police officer up to the time of the injury, and that for a number of years before the accident he had suffered from high blood pressure, arteriosclerosis, and diseased kidneys and heart. To assist the jury therein in fixing the present value of such future pension, the court admitted in evidence mortality tables showing the life expectancy of a man aged 58 years in average health to be 15.39 years, and allowed an actuary to testify that the present value of the policeman's pension based

upon such expectancy was $12,500. Said evidence was re-- ceived over the objection of defendants, which objection was made on the ground that plaintiff was not a person in average health. The court therein said, at page 359: ''The tables were admissible, although the evidence showed that respondent was suffering from ailments which probably would shorten his life to less than that of a person in average or ordinary health. (19 R.C.L. 217; 17 C.J. 875.) The objection which goes to use of the tables, not their admissibility, was correctly handled in the instructions.'' The rulings of the court herein relative to the testimony of the actuary, and relative to the annuity charts, were prejudicially erroneous.

The proposed evidence as to the present worth of future pecuniary loss was not conclusive evidence as to the amount of damages to be awarded. In determining the amount of damages, such evidence was to be considered with several other elements, such as the health, activity and occupation of the deceased, his earning capacity, and the various amounts which reasonably might be expected to be contributed by him for support over the period the jury finds he would furnish such support. An instruction should be given, stating the restrictive significance of such evidence, to the effect that such evidence as to the present value of future pecuniary loss is not conclusive as to the amount to be awarded as damages, but is only one of several elements to be considered in determining the amount to be awarded.

When counsel for plaintiff was presenting his argument before the jury, he said that one of the principal factors to be determined by the jury was the pecuniary loss for future support sustained by the wife and children of the deceased; that in determining such loss it would not be fair to defendants to merely multiply the monthly or annual support by the number of months or years the jury believed he would have supported his heirs, because the amount of money awarded by the jury could be invested and would earn interest; that it was the jury's problem to determine the present value of such future loss, that is what amount of money, if paid now, and invested would provide his dependents with support they had lost, and all be used up at the end of the time the jury believed he would have provided such support. He then stated further in his argument: ''Now this determination requires the application of mathematical calculations which are too difficult for the ordinary person such

as you or I to make, but fortunately tables have been worked out by persons peculiarly skilled in this field who are known as actuaries. Now the actuaries tell us—.'' Whereupon counsel for defendants interrupted, stating: ''Now, I don't believe in people attempting to do something indirectly which the Court has ruled that they can't do directly, and I cite that as misconduct of counsel.'' After some discussion between counsel, counsel for plaintiff said: ''We discussed this very thing in chambers, as I recall it, your Honor, that there would be no objection to me making such calculations as I wanted to.'' Then counsel for defendants said: ''Oh, Mr. Sperry, the matter is a matter of record; I know what was said in there. Now as I say, I made one statement that I have no objection to your doing one thing, but I was not talking—and you know it, about what you are talking about now. I cite it as reprehensible misconduct on the part of counsel and cite it as error.'' Thereupon the court said: ''I think counsel should not undertake to quote anybody else. If he wants to make calculations which he suggests to the jury as merely his own argument, he may do so, but I think it is not proper to undertake to quote anybody else.'' Counsel for plaintiff then said ''I wasn't trying to quote any specific persons. I just said the actuaries—I mean the figures of the actuaries that have been worked out.''

Counsel for plaintiff contends that the comment of counsel for defendant to the effect that he (plaintiff's counsel) was guilty of ''reprehensible misconduct'' in stating, ''Now the actuaries tell us—,'' was improperly and unjustifiably made. He argues that since such comment was a part of a statement wherein defendants' counsel objected to the argument and since the comment was followed by the ruling of the court sustaining the objection, the jury was thereby prejudiced against plaintiff's counsel and caused to disregard his argument in respect to damages. Counsel for defendants having stated in chambers, as above mentioned, ''Now I would have no objection to counsel using all of the computations and mathematical deductions he desires as a part of his argument to the jury,'' counsel for plaintiff was justified in assuming that he could, without objection, use the computations of actuaries in his argument to the jury. Under the circumstances the comment of counsel for defendants should not have been made, and it was prejudicial to plaintiff.

The portion of the judgment from which the appeal is

taken, that is, that portion "which assesses, fixes and limits the damages and the amount payable to the plaintiff," is reversed, and the superior court is directed to retry the issue as to the amount of damages only.

Desmond, P. J., concurred.

SHINN, J.—I dissent. The court properly excluded the testimony of the actuary. That testimony would have shown that it would take from $34,000 to $88,000, invested at 2 per cent, 3 per cent or 4 per cent, to return $200, $300, or $400 per month for a period of 25 years or a period of 28.9 years. Plaintiff makes conflicting contentions respecting the purpose of the offer of this testimony. It is claimed that it was evidence tending to prove some fact in the case, and it is also contended that it was merely a mathematical calculation offered as an aid to the jury in the solution of a mathematical problem. I think the clear purpose of the offer was to prove the cost of an annuity that would return some amount monthly to the dependents of the decedent for the term of his life expectancy. If the law made that the basis of a recovery in a death case, the testimony of the actuary would have been evidence as to a fact in issue. Of course that is not the basis upon which damages are fixed. If, therefore, the purpose was merely to prove the cost of an annuity, the evidence was properly excluded. Upon the other hand, if, as plaintiff also claims, the calculations of the actuary were offered in evidence merely to aid the jury in solving a mathematical problem, the testimony was properly excluded. The present value of deferred payments cannot be determined mathematically unless the date and amount of each deferred payment are known. Where they are known it is proper for a court or jury to fix the present value of the total of the deferred payments. The court may receive the testimony of experts as an aid in making the computation, just as it may resort to the use of interest tables, but the testimony is not evidence of any fact in issue. When the court uses an interpreter to translate the testimony of a witness, it is the witness, and not the interpreter, who gives the evidence. It has never been considered necessary to prove the multiplication table by experts, although their assistance in the use of it is often of value. But in the present case the calculations should not have been used at all. The impossibility of reducing antic-

ipated deferred payments to a cash value is too clear to admit of argument. It would have been necessary for the jury to find what would have been the contribution of the decedent each month of each year from the 40th to the 67th year of his life. Manifestly impossible.

Let us analyze plaintiff's contentions a bit further. The jury, it is said, was deprived of evidence which would have enabled it to fix the present value of deferred payments. What is the consequence? It could only be that after determining the total of the amounts that would have been received by the dependents, the jury failed to reduce the same to its present value or, in other words, that the verdict was larger than it would have been if the jury had applied the mathematics used by insurance companies in fixing the amounts to be charged by them for annuities. The reduction to present value of the total of deferred payments is something which is of interest to the debtor, not the creditor. This is shown by the statement of plaintiff's attorney that ''it would not be fair to defendants to merely multiply the monthly or annual support by the number of months or years the jury believed he would have supported his heirs, because the money could be invested and would earn interest'' etc. In my opinion, it would be a serious mistake to even suggest to a jury that they should make an effort to fix the present value of deferred payments in an action for wrongful death, where the anticipated contributions would extend over a long period of time (in the present case into the 68th year of the lifetime of the deceased), and when it would be impossible to know the exact amounts that would have been contributed and the exact period over which they would have extended. The problem involved in arriving at a just amount of the recovery in a case of this sort is one of great difficulty. The approach to it should be made as simple and direct as possible. The trial court was eminently correct in excluding the offered testimony of the actuary. Furthermore, it was stated that no objection would be made if plaintiff's attorney wished to give to the jury, in argument, his own calculations along the lines of those attempted to be proved by the actuary. This was all plaintiff's attorney had a right to do. If plaintiff would have derived any advantage from the use of the tables as evidence, it would have been an undeserved advantage.

The claimed misconduct of defendants' attorney was not

misconduct at all. It was entirely proper to object to the use of the calculations as those of the actuary, which had been offered as evidence and excluded. In assigning the attempted use of the figures as misconduct, the use of the word "reprehensible" is not subject to criticism. Under the authorities, it is necessary to assign improper statements in argument as misconduct, in order to save the point. The trial judge ruled that the objection registered by counsel for defendant was well taken. Reprehensible conduct is conduct that is subject to censure. If it is not in bad faith it is not misconduct. If it is in bad faith, it is subject to censure, or reprehensible. There is no merit whatever in the claim that counsel for defendants was guilty of misconduct in the choice of words employed in the assignment of alleged misconduct of opposing counsel. Minor clashes are of frequent occurrence where counsel are alert and aware of their duties to their clients. Such passages between counsel as the one in question have never been recognized as misconduct or as justifying a reversal. I do not believe that plaintiff's attorney in his reference to the actuary acted in bad faith. But that is not the question. I am well satisfied that the attorney for defendants acted in good faith and properly in reserving the point of alleged misconduct. If there was a sting in the word "reprehensible" it was effectually removed by the statements of the court, as follows: "THE COURT: I think Mr. Sperry has not intentionally over stepped any line and I am sure he wouldn't want to do that and hasn't done it intentionally, but I think any presentation that you make, Mr. Sperry, ought to be your own deductions from the evidence presented. You are at liberty to do that.

"MR. SPERRY: Am I not entitled to tell the jury what amount it would take now to yield that amount.

"THE COURT: As your calculation, you can make it, but I think you are not entitled to undertake to quote any authorities on that subject."

Plaintiff's announced theory, presumably, was placed before the jury during the argument. If it was given their consideration, which plaintiff's counsel told the jury it should have, the natural consequence would have been to reduce the amount of the verdict that otherwise would have been rendered.

The main opinion does not place a reversal upon the ground of inadequacy of the damages—a far more serious

question than the one adopted as ground for a reversal. The verdict of $12,000 was small. Another jury might have returned a much larger verdict. That a verdict is small is not, in itself, a ground for reversing a judgment in order that there may be a new trial of the issue of damages. It is the duty of the trial judge, in passing upon a motion for new trial, to determine whether the verdict accords with the weight of the evidence. He exercises a broad discretion in deciding this question. A reviewing court should not disturb a verdict as to amount unless it clearly appears that it was arrived at in disregard of the evidence. This question must be decided, having in mind that the trial judge has made a careful review of the evidence and has determined that the verdict is not an unreasonable one. It is true that much larger verdicts have been sustained in comparable situations, but this is not a ground for holding that the present verdict was reached without a fair consideration of the evidence. A comparison of one verdict with other verdicts in comparable cases proves only that the verdicts of some juries are larger or smaller than those of other juries and in very substantial amounts. These are conditions which always have been and will continue to be inherent in the jury system. There is a wide diversity of view among individuals as to the value of money and the uses that should be made of it. That is why we have Tiffany's on one side of the street and Woolworth's on the other. I am of the opinion that the verdict was not so small as to require a retrial of the issue of damages. The judgment should be affirmed.

A petition for a rehearing was denied February 28, 1946. Shinn, J., voted for a rehearing.

Respondents' petition for a hearing by the Supreme Court was denied April 1, 1946.