McCROSSEN and wife, Appellants, v. NEKOOSA EDWARDS PAPER COMPANY, INC., Respondent.*

*No. 411. Argued May 2, 1973.—Decided June 18, 1973.*
(Also reported in 208 N. W. 2d 148.)

* Motion for rehearing denied, without costs, on August 28, 1973.

248

For the appellant John McCrossen there were briefs by *Potter, Wefel & Nettesheim* of Wisconsin Rapids, and oral argument by *John M. Potter.*

For the respondent there was a brief by *Chambers, Nash, Pierce & Podvin* of Wisconsin Rapids, and oral argument by *Lloyd L. Chambers.*

HEFFERNAN, J.   The pleadings in this case put in issue the question of whether McCrossen was exposed to poisonous gas at all.  There was substantial evidence, as the result of testimony of Nekoosa Edwards employees, to the effect that they knew of no gas leaks in the bleach plant on the days in question.  On the other hand, there was positive testimony by McCrossen and his co-employee, Eastlund, that gas was present on the fifth floor of the bleach plant on both January 13th and January 14th in a substantial concentration.  The testimony in this respect posed a question for the jury, which was resolved by finding the defendant negligent.  On this appeal, the de-

fendant has not questioned the jury's verdict in respect to its own negligence, but rather contends that the plaintiff was contributorily negligent in several respects.

The defendant contends that the plaintiff was contributorily negligent in failing to tell the Nekoosa Edwards supervisory employees about the gas leak which he claims drove him from the building on January 13th. Defendant appears to argue that, had such notice been given, the alleged reoccurrence of a leak on January 14th could have been avoided. On the other hand, there was testimony, received without objection, by a Nekoosa Edwards nurse, who stated that, after she treated the plaintiff on the 14th, she reported the accident to the mill superintendent. The mill superintendent told her that there had also been a chlorine dioxide leak in the bleach plant on the previous day. The superintendent, while on the stand, did not deny making this statement but stated that he could not recall it. In any event, it would appear that the jury on this disputed evidence could reasonably have concluded that the plaintiff's undisputed failure to report the leak was not causal, since the responsible employee of the mill had knowledge of the prior leak. Accordingly, assuming that the failure to report the leak could have been negligence, a jury question remained in respect to cause. The defendant cannot rely upon this element of negligence to support its contention that the plaintiff was negligent and causally so as a matter of law in this respect. The question was for the jury.

Nekoosa Edwards also argues that, if the plaintiff was exposed to gas on January 13th, he was contributorily negligent in returning to work in the same area on the following day without first determining that the area was safe. The defendant is in effect arguing that McCrossen was guilty of conduct which, under an earlier view of the law prior to *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. 2d 374, 113 N. W. 2d 14, and *Gilson v. Drees Brothers* (1963), 19 Wis. 2d 252, 120 N. W. 2d 63, was referred to as assumption of risk.

Prior to adoption of Wisconsin's contributory negligence statute, contributory negligence was a defense to the owner of premises in a safe-place statute action involving an employee, while assumption of risk was not. Since the time of *McConville, supra,* and *Gilson, supra,* assumption of risk as a separate defense for a tort-feasor has been treated as contributory negligence. Nevertheless, in the employee situation, the type of contributory negligence once subsumed under the heading of assumption of risk, carries with it, by virtue of an employer's duty to furnish a safe place of employment and the duty of an owner of premises to furnish a safe place for frequenters when they are there in the course of employment, a different obligation upon an employee than upon another who may be on allegedly unsafe premises only for his own purposes. An employee, when at work in a place of employment, is there because of the directions of his employer. In *Beck v. Siemers* (1921), 174 Wis. 437, 183 N. W. 157, the court stated that, under the safe-place statute, merely to continue with the work directed by the employer although the premises are unsafe does not constitute contributory negligence. The court in *Beck* advised:

"[I]t would seem best in cases of this character to instruct the jury that merely continuing in an employment and doing work as intended by the employer and the employee in the usual and ordinary manner, although the place of work or appliance is unsafe, does not constitute contributory negligence." (P. 442)

In *Meyer v. Val-Lo-Will Farms* (1961), 14 Wis. 2d 616, 111 N. W. 2d 500, the court noted, although the case did not involve an employment relationship, that whether the conduct of an injured person constituted contributory negligence was affected by the fact that the person attempted to be so charged was a workman at his place of employment. The court in *Meyer,* page 622, stated, "This fact may bear upon the reasonableness of their exposing themselves to a particular risk." *Meyer* thus

recognized that a special factor is injected and by implication indicated that, when a jury is called upon to determine the contributory negligence of an employee who nevertheless proceeds to work in an unsafe place, that was a fact which the jury should consider.

More recently, this court in *Young v. Anaconda American Brass Co.* (1969), 43 Wis. 2d 36, 46, 168 N. W. 2d 112, discussed the contention that, in a safe-place action, ". . . the employee's contributory negligence is less when his act or omission has been committed in connection with the performance of his duties." Relying upon *Meyer, supra,* the court in *Young* concluded:

"[I]t may be more reasonable to assume certain risks in the employment situation than in other situations." (P. 47)

" 'Conduct constitutes negligence if the risk of harm involved is of such magnitude as to outweigh what the law regards as the utility of the act or the manner in which it is done.' " (quoting *Meyer, supra,* p. 622). (P. 46)

Using this test, the reasonableness of the plaintiff's conduct, *i.e.,* was he contributorily negligent, must be determined in the light of the utility of going to work at his usual place of employment and performing work in the usual manner even though there was a possibility that the premises might be unsafe. No case has been called to our attention, and we have found none, in which this court has approved a finding of contributory negligence merely because an employee continued to work on premises which he knew might be unsafe. To so hold would run contrary to the policy of previous place-of-employment decisions under the safe-place statute.

When McCrossen arrived at work on the morning of January 14th, there was no evidence of a gas leak and the bleach plant was operating under what were apparently nonhazardous conditions. Neither the defendant's employees nor the plaintiff's foreman warned him of any danger. Under the evidence, McCrossen was going

to his usual place of employment. Without a greater showing of facts than has been made in this record, we would conclude, as a matter of law, that he was not negligent in returning to his place of employment in the bleach plant.

The only question in respect to the plaintiff's negligence presented by this record is whether he acted reasonably when he failed to detect the buildup of gas around him and failed to escape from the area before the gas reached a dangerous concentration.

The plaintiff's evidence tended to prove that the exhaust fan on the chlorine dioxide washer had stopped functioning and that, consequently, chlorine dioxide escaped from the washer into the surrounding area. The defendant, however, presented convincing testimony from which the jury could have believed that, in the event of such breakdown, the seepage of gas would be quite slow and that, had the plaintiff exercised ordinary care, he would have smelled the gas long before it reached a dangerous level. On the other hand, the record does not conclusively establish the origin of the gas leak or that it was necessarily chlorine rather than the relatively odorless chlorine dioxide.

The plaintiff testified that he did not notice any odors until he noticed he was having some "trouble," at which time he straightened up from his work and then was almost instantly overwhelmed. There were also facts presented which could have led the jury to conclude that the buildup was almost instantaneous and the plaintiff was not negligent in failing to detect it sooner. The record reveals that, because of the plaintiff's inability to open the door, he remained in the toxic atmosphere for approximately five minutes. Another door was available from which he could have left the premises rapidly, and had he made a reasonable determination of why the door was jammed, he could have quite readily removed the electric cord which jammed the escape door shut. While

the jury could have found, on the basis of the evidence, that the plaintiff was negligent in failing to perceive the buildup of the gas, it could also have found him negligent for failure to act reasonably at the time the gas reached a toxic concentration. Under the instructions given, the jury could well have based its finding of contributory negligence solely on its conclusion that the plaintiff reacted negligently when confronted with an emergency. Under the state of facts revealed by the record, the trial court committed reversible error in refusing plaintiff's request for an emergency instruction.[1]

"The emergency rule provides that a person confronted with an emergency not caused by his own negligence is not at fault if he takes action as an ordinarily prudent person might if placed in the same position, even if it subsequently appears that he did not choose the wisest course." *Ivy v. Tower Ins. Co.* (1966), 32 Wis. 2d 231, 235, 145 N. W. 2d 214.

In order for the rule to be applied, it must appear that the time in which the person had to act was so short as to preclude a deliberate and intelligent choice of action. *Vanderkarr v. Bergsma* (1969), 43 Wis. 2d 556, 567, 168 N. W. 2d 880; *Cook v. Thomas* (1964), 25 Wis. 2d 467, 471, 131 N. W. 2d 299.

---

[1] The requested instruction, based on Wis J I—Civil, Part I, 1015, was:

"Negligence on emergency

". . . you are instructed that a person such as John McCrossen who is suddenly confronted by an emergency, not brought about or contributed to by his own negligence, and who is compelled to act instantly to avoid further inhalation of gas, is not guilty of negligence if he makes such choice of action or inaction as an ordinarily prudent person might make if placed in the same position, even though it should afterwards appear not to be the best or safest course. You will bear in mind, however, that the rule just stated to you does not apply to any person who negligently, wholly or in part, created the emergency. One is not entitled to the benefit of the emergency rule unless he is without fault in the creation of the emergency."

While the emergency rule in Wisconsin has had its greatest development in the area of automobile accident cases, its application is by no means limited to negligence on the road. The earliest Wisconsin case applying the doctrine appears to have been *Schultz v. Chicago & Northwestern Ry. Co.* (1878), 44 Wis. 638, in which a railroad worker injured in a switchyard was given the benefit of the rule. More recently, in *Ivy v. Tower Ins. Co., supra,* the doctrine was considered in the context of an action brought by a construction worker who had been injured by a piece of concrete thrown from a backhoe.

Whether plaintiff was entitled to application of the emergency doctrine depends on whether he negligently contributed to the creation of the emergency. We pointed out above that the question of whether plaintiff caused the emergency by remaining after he should have been first aware of the gas buildup was for the jury. In such situation, where there is a jury question as to the cause of the emergency and the time element is so short as to make the doctrine otherwise applicable, a party is entitled to the emergency instruction and it is for the jury to determine its application. *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 703, 151 N. W. 2d 741; *Gage v. Seal* (1967), 36 Wis. 2d 661, 154 N. W. 2d 354, 155 N. W. 2d 557. In *Geis v. Hirth* (1966), 32 Wis. 2d 580, 146 N. W. 2d 459, the trial court refused to give the emergency instruction on the ground that the plaintiff had failed to establish that her negligence had not created the emergency situation. This court held that the question of the plaintiff's negligence was for the jury and that failure to give the instruction was prejudicial error.

Here, there was evidence from which the jury could have concluded that, through no fault of his own, plaintiff was confronted with an emergency requiring instant response on his part to avoid injury. Under the circumstances, the trial court's failure to give the requested

emergency instruction was prejudicial error requiring a new trial on the issue of liability.

The plaintiff also claims error because the trial judge, upon objection, refused to permit the jury to hear the testimony of Professor Bicknell, an actuarial expert, on the plaintiff's loss of future earning capacity. In an offer of proof made out of the presence of the jury, plaintiff's attorney propounded a hypothetical question asking the witness to assume that the plaintiff had a working life expectancy of nine years and that, without his disability, he could expect to work sixteen hundred hours a year and receive a four percent increase in wages every six months. On the basis of these assumptions, the witness was asked to compute the present value, at the rate of five percent, of the future earnings which plaintiff would lose because of his alleged complete disability.

In the offer of proof, the actuarial expert testified that the present value of the plaintiff's expected loss of future earnings was $104,000. In response to a further hypothetical question assuming no future wage increases, he concluded that the present value of the loss of future earnings, given the other assumptions, would be $75,000. The trial court sustained the objection to the testimony in respect to both questions and refused to permit putting the questions in the presence of the jury.

The defendant on this appeal argues that the answers to the hypothetical questions were properly excluded because they were based on assumptions not clearly established by the evidence. However, contrary to the defendant's assertion on this appeal, it is not objectionable that the evidence supporting assumptions on which a hypothetical question is based is in dispute. Having established in the evidence some basis for the assumptions, they may be utilized in formulating a hypothetical question to an expert. Whether the jury believes the underlying assumptions is within its fact-finding functions. A party having made an evidentiary showing to support the assumptions is entitled to put his side of the

case to an expert for an opinion. *Rausch v. Buisse* (1966), 33 Wis. 2d 154, 169, 146 N. W. 2d 801; McCormick, *Evidence* (hornbook series, 2d ed.), p. 33, sec. 14. Moreover, the assumptions upon which the hypothetical questions were based were in evidence, and the defendant on this appeal does not argue that they are incorrect.

There was testimony by the business representative of the plaintiff's construction union that between 1966 and 1969 about eighteen hundred hours of work were available in the area each year for workmen in the plaintiff's trade. He also testified that a skilled workman like plaintiff, for whom he had received frequent call backs by employers, could normally expect to work between fourteen hundred and sixteen hundred hours per year. The plaintiff testified that in 1965, the last full year prior to the accident, he had earned $7,382.62. The union wage scale applicable to the plaintiff's trade was introduced, together with contracts going back for a period of five years, which showed that carpenters' wages had been increasing by at least 10 percent a year. The five percent discount rate used to calculate the present value was based on the expert's professional experience with the State Investment Board, and the life expectancy of the plaintiff was introduced by the trial court taking judicial notice of a life expectancy table compiled by the United States Department of Labor.

The testimony of the actuarial expert was speculative only to the extent that it was based upon the assumption that conditions relating to the plaintiff's earning power would remain constant in the future. Defendant's objection, therefore, goes not to any defect in the presentation of the hypothetical question nor the evidentiary underpinnings for the assumptions on which it was based but rather probes the basic problem implicit in any attempt to predict the future with certainty.

This court has recognized this problem inherent in determining the present value of future losses and has weighed the inability of a court or anyone else to predict

the future with certainty against the considered policy conclusion that the ends of justice will be furthered by recognizing the probabilities in respect to the computation of future damages. In *Reinke v. Woltjen* (1966), 32 Wis. 2d 653, 660, 146 N. W. 2d 493, this court stated:

"In determining damages to be awarded for impairment of earning capacity or loss of future earnings, in most instances, the finder of the fact must deal in some probabilities. . . . Some (but not all) of the elements which cannot always be shown with certainty are the length of time a disability will exist, the degree of improvement or additional disability that will ensue, the aptitude and ability of a disabled person to engage in other types of work, and the compensation he will be able to obtain. As to these and other uncertain elements the trier of fact must be allowed to consider the reasonably apparent probabilities as they appear from the evidence, together with such known facts as his age, his education and training, the type work he was doing before the injury, and the compensation he was receiving, and then in its judgment determine what amount fairly and reasonably represents his loss of earning capacity, reduced to its present value."

This court, therefore, has recognized that income at the time of injury is properly considered in the extrapolation of earnings, even though future wages cannot be ascertained with certainty. Wisconsin cases have recognized that, in order to show the impairment of future earning capacity, a plaintiff must be permitted to introduce evidence that is more speculative and uncertain than would be acceptable for proof of historical facts. *Thoreson v. Milwaukee & Suburban Transport Corp.* (1972), 56 Wis. 2d 231, 240, 201 N. W. 2d 745; *Krause v. Milwaukee Mut. Ins. Co.* (1969), 44 Wis. 2d 590, 172 N. W. 2d 181; *see also:* Ghiardi, *Personal Injury Damages in Wisconsin,* pp. 123 ff., ch. 8. In *Thoreson, supra,* this court held proper the admission of testimony to show the loss of future earning capacity for a disabled three-year-old child. We approved the trial court's determina-

tion to permit the testimony of an economist who testified in respect to what "the average workingman" could be expected to earn during a lifetime. While *Thoreson* pointed out that evidence permissible in respect to the future earning capacity of a child might be too speculative to support an award where an adult is concerned, the case makes clear that the court recognizes that certainty is an unattainable standard to predict future losses and that, to do justice, calculations based on the facts at hand and upon reasonable probabilities satisfy the rule.

The offered actuarial testimony in respect to the loss of future earnings based upon the assumption that the wage rate would remain static was admissible, and the rejection of the testimony was error. Whether the jury was to believe the assumptions on which the question and answer were based or whether it was to give credence to the answer was within the province of the jury. Any weakness in the testimony of the actuarial expert or in the assumptions on which it is based could properly have been attacked by rebuttal testimony or by cross-examination. The question asking the actuarial expert to make a calculation based on no wage increases was clearly a proper question, the answer to which was admissible in the courts of this state and in most other jurisdictions. *Southern Railway Co. v. Stallings* (1959), 268 Ala. 463, 107 So. 2d 873; *Emery v. Southern California Gas Co.* (1946), 72 Cal. App. 2d 821, 165 Pac. 2d 695; *Allendorf v. Elgin, Joliet and Eastern Railway Co.* (1956), 8 Ill. 2d 164, 133 N. E. 2d 288; *Von Tersch v. Ahrendsen* (1959), 251 Iowa 115, 99 N. W. 2d 287; *Baltimore & Ohio RR. Co. v. Whitacre* (1915), 124 Md. 411, 92 Atl. 1060; *Leave v. Boston Elevated Ry. Co.* (1940), 306 Mass. 391, 28 N. E. 2d 483; *Krohmer v. Dahl* (1965), 145 Mont. 491, 402 Pac. 2d 979; *St. Louis-San Francisco Ry. Co. v. King* (Okla. 1954), 278 Pac. 2d 845; *Brodie v. Philadelphia Transportation Co.* (1964), 415 Pa. 296, 203 Atl.

2d 657; *Bennett v. Denver & Rio Grande Western R. Co.* (1950), 117 Utah 57, 213 Pac. 2d 325.

The second portion of the hypothetical question (actually the question first propounded), assuming an annual eight percent increase in the wage levels, presents a different problem. Since it injects the factor based but tenuously on past experience, we conclude that, in the exercise of proper discretion, the trial judge could refuse to permit the posing of a hypothetical question that assumed a series of wage increases in the future. While past experience gives considerable support to such assumption, we do not consider the trial judge's rejection of that question an abuse of discretion. On the other hand, given the evidentiary foundation of an uninterrupted series of wage increases and the recent economic history of the industry, we would not upset the trial judge's exercise of discretion were he to have permitted the question and its answer.

We find the rejection of the question that assumed a static wage figure to be error. However, not all errors at trial mandate a reversal. Trial error is prejudicial only when it reasonably could be expected to affect the outcome of the case. The general rule that this court follows is that it will not reverse for error unless it appears probable from the entire evidence that the result would have been different had the error not occurred. *Lautenschlager v. Hamburg* (1969), 41 Wis. 2d 623, 634, 165 N. W. 2d 129.

Except for the actuarial testimony by Prof. Bicknell relating to discount rates that were within his own professional expertise, it was not his function to bring facts to the jury upon which it could base the loss of earning capacity. These underlying facts were introduced independently and related to the plaintiff's wages, prior work experience, training, physical condition, income prior to the accident, and life expectancy, and the general wage level expected in his trade. Professor Bicknell's

function was primarily to assist the jury in computing an amount of damages for the impairment of future earning power based upon the testimony of other witnesses. In this sense his testimony was but cumulative.

The trial court instructed the jury on the issue of damages for impairment of future earning capacity and explained the process by which it could compute an award. In one sense, despite the absence of the actuarial expert's opinion, the jury had the facts before it by which it could make a proper determination of the loss of future earning capacity. Many cases from other jurisdictions hold, however, that, despite the fact that the jury has before it the underlying facts relevant to a future wage loss computation, the testimony of an actuary is appropriate in order for the jury to compute the present value of a future wage loss. *Haddigan v. Harkins* (3d Cir. 1970), 441 Fed. 2d 844, 853, points out that actuarial testimony is essential where loss of future income is in issue, since otherwise the jury has no guidance in making the appropriate mathematical calculations. We do not go so far as to follow the third circuit rule that actuarial testimony is necessary in all cases, but in the instant case a complex of variables was presented to the jury, and we are satisfied that the jury's search for the truth would have been materially aided by actuarial instruction.

While the defendant obviously disagrees with Prof. Bicknell's conclusions, they readily could have been probed by defense counsel submitting his own hypothetical question based upon the underlying assumptions which the defense believed to be probative. By so doing, the jury would have had the benefit of actuarial guidance and at the same time would have had explained to it the assumptions which the defense thought were appropriate in making the determination.

In the trial judge's comprehensive memorandum opinion he concluded that the jury probably believed

that the plaintiff suffered no loss of future earnings, since their award was so low that it appeared to encompass only the damages for wages lost prior to the time of trial. In view of the nature of the verdict, however, we cannot reach this conclusion. Taking into consideration all of the criteria for evaluating prejudicial error, we conclude that the jury's evaluation of the loss of future earning capacity was skewed to the plaintiff's detriment and prejudice by the exclusion of the actuarial testimony. The exclusion of that evidence warrants a new trial on the issue of damages.

We find no error in the trial judge's failure to instruct on damages resulting from traumatic neurosis. The plaintiff asked for a special instruction, Wis J I—Civil, Part II, 1752. In refusing the requested instruction, the trial judge pointed out that the requested instruction was adequately covered in the general instruction on personal injuries—Wis J I—Civil, Part II, 1750—which called upon the jury to assess the plaintiff's damages for impairment of "his mental and bodily health" and for "worry and mental distress." The evidence here, although characterized by the plaintiff's physician as being "a psychoneurosis" was nevertheless explained by him as being an emotional problem, not separate from McCrossen's alleged physical impairment. While we would not hold it improper for the trial judge to have given the requested instruction, the failure to do so was not error. This court has held that it is harmless error to refuse a requested specific instruction which correctly states the law if the instruction is embodied in the general instructions given. *Dennik v. Fox River Bus Lines,* (1960), 11 Wis. 2d 177, 182, 105 N. W. 2d 364; *Schafer v. Time Ins. Co.* (1966), 32 Wis. 2d 694, 146 N. W. 2d 413. In the instant case, because the "psychoneurosis" testimony referred to the emotional suffering that was an integral part of the physical disability, we conclude that it was not error to exclude the special instruction.

In an effort to impeach the past earning record of the plaintiff, defendant's attorney introduced records and testimony showing that the plaintiff had received general relief in a number of years prior to the accident. The plaintiff claims that the defendant's attorney improperly obtained access to the records of the Wood County Department of Social Services and was able to do so only because he was the attorney for that department, while the plaintiff was denied access to the records. There is no evidence of record to show that the plaintiff's counsel ever attempted to obtain these records or was denied access to them. The claim is based only on the unsworn assertion of plaintiff's counsel. Whatever the fact may be, this court's review on an evidentiary matter of this type is foreclosed where an assertion is not supported by sworn testimony or other competent evidence. Moreover, as a matter of law, whatever limitations there might be on the right of the public's access to welfare records, sec. 49.53, Stats., which limits the use of some records, conspicuously omits any provision for secrecy in respect to those relating to general relief, the only type of welfare involved in this case. While the trial court in the exercise of its discretion might well have excluded these records on the basis that their probative value was outweighed by the possibility of prejudicing the plaintiff's cause in the eyes of the jury, no objection on that basis has been called to our attention. *Whitty v. State* (1967), 34 Wis. 2d 278, 294, 149 N. W. 2d 557. The introduction of these records under the circumstances was not error.

At oral argument, defense counsel pointed out that the plaintiff's attorney failed to follow the rules of this court in the preparation of his appendix. Defendant's counsel argues that the plaintiff's appendix omits mention of the most damaging medical testimony. In some instances, the plaintiff's appendix reveals only those portions of a witness' testimony favorable to the

plaintiff while omitting those portions which are not. The highly relevant and important testimony of the defendant's experts on the physical characteristics and the possible disability which could result from the inhalation of chlorine and chlorine dioxide was omitted entirely from the appendix. Under the rules of this court, an appellant is required to include in his appendix all portions of the record which are material to the issues raised in his brief, including those portions that are unfavorable to the argument asserted. *Withers v. Tucker* (1965), 28 Wis. 2d 82, 88, 135 N. W. 2d 776; *Seifert v. Milwaukee & Suburban Transport Corp.* (1958), 4 Wis. 2d 623, 627, 91 N. W. 2d 236. As a result of the plaintiff's failure to follow the rules of this court, defendant, to give this court a balanced presentation of the facts, was obliged to prepare and print a 23-page supplemental appendix. The defendant's motion to deny the plaintiff costs on this appeal is granted. *Gillard v. Aaberg* (1958), 5 Wis. 2d 216, 221, 92 N. W. 2d 856; sec. (Rule) 251.85, Stats.

Viewing the case as a whole, we conclude that the trial court committed prejudicial error in failing to give the appropriate emergency instruction. Prejudicial error was also committed when it excluded the actuarial testimony of Prof. Bicknell. Since we find prejudicial error in the proceedings that led to the determination of both the negligence and damages portions of the verdict, the judgment is reversed and a new trial is ordered on all issues.

*By the Court.*—Judgment reversed, and cause remanded for a new trial. No costs allowed on this appeal.