## STATE of Wisconsin, Plaintiff-Respondent,

## v.

## Jerry HARRIS, Defendant-Appellant.†

Court of Appeals

*No. 86-0090-CR. Submitted on briefs July 8, 1986.—Decided July 28, 1986.*

(Also reported in 393 N.W.2d 127.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Gregory J. Meeker* and *Callaway, Dunn & Meeker, S.C.* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *William L. Gansner*, assistant attorney general.

Before Gartzke, P.J., Dykman, J., and Eich, J.

EICH, J. Jerry Harris appeals from a judgment convicting him of one count of battery and three counts of second-degree sexual assault, and from an order denying his motions for postconviction relief. He raises

a single issue: Was he deprived of his right to the effective assistance of counsel when his attorney, in closing argument, acknowledged that not all of Harris' testimony had been truthful? We answer the question in the negative and affirm.

Harris was charged with battering and sexually assaulting his former wife, Pamela Wandera. Of the three sexual assaults charged, two were alleged to have occurred in Harris' room at the Madison YMCA. A third assault was alleged to have taken place in the YMCA parking lot. The jury returned guilty verdicts on all counts.

Harris, who testified at the trial, argues that he was denied effective assistance of counsel when his trial attorney, Stuart Richter, made the following remarks to the jury during closing argument: "I'm not asking you to believe Jerry Harris" and, at another point, "[h]e certainly wasn't telling the truth about everything." In denying Harris' postconviction motions, the trial court, considering the background of the trial and the context in which the remarks were made, concluded that Richter's conduct did not violate prevailing standards of professional competency. We agree with that conclusion.

In his opening statement to the jury, Richter noted that Harris conceded that he had "a consensual sex act" with Wandera on the night in question and that they then quarreled and he struck her several times. Richter told the jury: "[Harris is] going to tell you all this. He's not going to hold anything back." During the prosecution's case, Wandera testified that several nonconsensual sex acts took place in Harris' room that night, and another in the parking lot.

Richter's trial strategy, as found by the trial court:

was to concentrate on defending against the sexual assault counts by raising a reasonable doubt about the State's assertion that the sex acts were not consensual. In his cross-examination of [Wandera] he made a reasonably skillful effort to undermine her testimony on the consent issue. In doing so, he implicitly conceded that the parties had engaged in sexual relations.

In furtherance of this strategy, Richter elicited from Wandera that she and Harris had always had an active and varied sexual relationship and that this relationship continued after their separation and divorce. He explored the subject in considerable detail.

When Harris took the stand, he admitted striking Wandera. However, he denied all but a single act of oral sex. The prosecutor, in his closing argument, attacked Harris' credibility and his version of the events:

> The whole purpose of [Harris'] bringing out this prior sex life is to make you believe that the issue in this case is consent. And then Mr. Harris gets on the stand and says no, it never happened in the first place.
> Well, ladies and gentlemen, if it happened, we have to deal with the issue of consent. If it didn't happen, if Pam was making up all these acts of sexual intercourse, then whether or not they had consentual [sic] intercourse in the past is completely, totally irrelevant. The defense case is it never happened. But if it did, it was consentual [sic]. . . .
> But if you don't believe him, if he's lying, it was still with the consent of Pamela.

Then, Richter, in his closing, stated:

> But the history and nature of the relationship, the fact that they were married and what that means

are all factors you should consider in deciding whether there was consent on a given day. And Mr. Auerbach makes a very good point that he is charging three counts of sexual assault that Jerry says sex didn't even occur, let alone sexual assault. I'm not asking you to believe Jerry Harris.

And, a little later:

And again, you know that Jerry has a record, prior record, convictions. What they are you are not to speculate. You promised you wouldn't. You promised you wouldn't use them to decide that he—that it is a piece of evidence that makes you think he did this crime, or that it is a piece of evidence that makes you think he is a bad person, and because he is a bad person he probably did this crime. You can't do that, and you shouldn't. I have confidence that you won't, because you promised me you wouldn't. It's only to be used to decide whether he is telling the truth or not. He certainly wasn't telling the truth about everything. Either [sic] was Pamela.

As might be expected, the prosecutor emphasized Richter's remarks in his rebuttal.

I wrote down what Mr. Richter said on credibility, and he said, I'm not asking you to believe my client, Jerry Harris. He certainly wasn't telling the truth about everything. Well, what's he hiding? Jerry Harris didn't get on the stand and say that there was three acts of intercourse or there were five acts of intercourse and they were consentual [sic]. Why not? His own attorney is saying, I don't believe him. Should you?

A claim of ineffective assistance of counsel has two components. The defendant must establish: (1) that the

attorney's performance was deficient in that he or she made errors so serious that the defendant was, in effect, denied the right to counsel guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense to the degree that the defendant was deprived of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *State v. Ludwig,* 124 Wis.2d 600, 607-08, 369 N.W.2d 722, 725 (1985).

The trial court decided the issue on the first element, concluding that Richter's performance was not deficient. It is a question of mixed law and fact. We will reverse the trial court's findings of fact—its underlying findings of what happened—only if they are clearly erroneous. Whether, based on those facts, counsel's performance was deficient is a question of law which we decide *ab initio,* owing no deference to the trial court. *State v. Pitsch,* 124 Wis.2d 628, 633-34, 369 N.W.2d 711, 714-15 (1985).

In determining whether Richter's representation of Harris failed to meet the standard of reasonableness, we must consider his conduct in light of the facts as they existed at the time. *Strickland,* 466 U.S. at 690.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize

that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.*, quoted in *Pitsch*, 124 Wis.2d at 636–37, 369 N.W.2d at 716.

As indicated, the trial court found that Richter's trial strategy was to defend against the three sexual assault charges by attempting to raise doubt in the jurors' minds as to whether the sex acts were nonconsensual and that, in furtherance of that strategy, he "implicitly conceded" in his cross-examination of Wandera that the parties had engaged in several such acts on the night in question. The court also found that the "consent" strategy was "seriously undermined" when Harris later testified that only a single, brief sexual act took place:

> It was Richter's impression that since his case was based on the jury believing Jerry Harris, and believing that the alleged sex acts happened but were consensual, that the principal defense strategy was seriously undermined by the defendant's testimony. He felt it was therefore in his client's interest for him to admit during his closing argument that Harris was not being completely truthful. Because the defense was consent, the concession that additional sexual acts may have transpired did not concede ultimate criminal liability. Given the opening statement and the cross-examination of defendant's wife, defendant's counsel had to attempt to reconcile this apparent conflict with defendant's trial testimony.

██

In order to establish deficient performance under *Strickland*, a defendant must prove that the representation "fell below an objective standard of reasonable-

ness," as evidenced by "prevailing professional norms." *Id.* at 687–88. Judicial scrutiny of counsel's actions is high deferential. *Pitsch*, 124 Wis.2d at 637, 369 N.W.2d at 716. There is a "strong presumption" that an attorney has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"—that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689–91.

Our review of the record satisfies us that the trial court's findings on the underlying facts are not clearly erroneous. And, we agree with the state that, under those facts, the challenged statements, viewed not only in their immediate context but in the larger context of the trial itself, constituted a reasonable exercise of Richter's professional tactical judgment, one falling within "the wide range of professionally competent assistance." *Id.*, at 690.

Richter had chosen a trial strategy that conceded the sexual encounters but asserted they were consensual. He pursued that strategy not only by introducing lengthy evidence of the continuing pattern of sexual relations between Harris and Wandera, but, as the trial court found, also by effectively conceding that several sexual contacts occurred on the night in question. Then, faced with his client's apparently surprising testimony denying all but one of the contacts, Richter was presented with the following choice: to abandon the "consent" strategy mid-trial, or to hold to that strategy and attempt to explain the apparent conflict posed by Harris' testimony by suggesting to the jury that Harris may not have been fully truthful in stating that only one sexual contact occurred.

As the trial court found:

> Richter vigorously defended the case, but was disappointed with what he believed to be his client's incredible testimony. He was in a position to observe his client's demeanor and the jury's reaction, and he believed it was apparent that Harris had not been honest in all of his testimony. In order to salvage his own credibility and his client's chances for acquittal with the jury, Richter made a tactical decision to suggest in closing that perhaps not everything his client said was true in the hope that the jury would not disregard all of the evidence favorable to his client.

The trial court correctly determined that Richter's remarks during closing argument were not deficient.

Finally, Harris argues that Richter's remarks evidenced his "lack of belief in his client," which is deficient performance *per se*, citing *Lowery v. Cardwell*, 575 F.2d 727 (9th Cir. 1978). *Lowery* appears to recognize a *per se* rule that denial of a fair trial may be presumed where defense counsel unequivocally informs the factfinder of his or her belief that the client's defense is based on false testimony. *Id.* at 730. But, neither *Lowery* nor the two state cases cited by Harris, *Commonwealth v. Sarvela*, 459 N.E.2d 114 (Mass. App. 1983), and *State v. Robinson*, 224 S.E.2d 174 (N.C. 1976), involved facts similar to those in the instant case. More important, all were decided before *Strickland*, which established the two-step analysis of claims of ineffective counsel. That analysis, which begins with the opposite presumption—that the attorney has provided "reasonable professional assistance"—is the rule in Wisconsin. *Ludwig*, 124 Wis.2d at 606–10, 369 N.W.2d at 725–27; *Pitsch*, 124

Wis.2d at 633–46, 369 N.W.2d at 714–21. Its use in this case requires affirmance.

*By the Court.*—Judgment and order affirmed.