143 Wis.2d 603 (1988)
422 N.W.2d 450
IN the INTEREST OF S.S.K., a person under the age of 18: C.N., Appellant,[]
v.
WAUKESHA COUNTY COMMUNITY HUMAN SERVICES DEPARTMENT, Respondent.
No. 87-1644.
Court of Appeals of Wisconsin.
Submitted on briefs November 25, 1987.
Decided February 24, 1988.
*607 On behalf of the appellant, the cause was submitted on the briefs of Jack E. Schairer, assistant state public defender.
On behalf of the respondent, the cause was submitted on the brief of Danni L. Caldwell, assistant corporation counsel for Waukesha county.
On behalf of the respondent-guardian ad litem, the cause was submitted on the brief of Edmond J. Vaklyes, Jr. of Waukesha.
Before Scott, C.J., Brown, P.J., and Nettesheim, J.
SCOTT, C.J.
The natural mother, C.N., appeals from an order which found her minor child, S.S.K., to be in need of protection and services under sec. 48.13(2), Stats., and placed him outside the home. She also appeals a post-dispositional order. The following issues are raised.
*608 (1) Whether C.N. was denied effective assistance of counsel. We conclude that such a claim does not lie in a proceeding alleging a child to be in need of protection or services (CHIPS).
(2) Whether the trial court erred in refusing to allow C.N.'s attorney, Frank Cappozzo, to withdraw. In light of the pretrial tactics which C.N. and her husband, R.N., engaged in, we find no error.
(3) Whether Judge James Kieffer erred in failing to recuse himself sooner than he did. This court concludes that even if it was error, it was harmless.
(4) Whether the trial court erred in admitting evidence from C.N.'s criminal file. We hold that no error was committed because of the limited use of the file.
(5) Whether the term "abandonment" as it is used in CHIPS proceedings is unconstitutionally vague. C.N. has not met her burden of proof on this issue.
(6) Whether it was error to condition S.S.K.'s return to C.N.'s home on the release of information by her and her husband, R.N., to the Waukesha County Community Human Services Department (department). This court holds that the condition was reasonable and in S.S.K.'s best interest.

FACTS
S.S.K. was born to C.N. on January 2, 1976. On September 26, 1976, C.N. killed S.S.K.'s father. The Milwaukee county circuit court found her not guilty of manslaughterimperfect self-defense by reason of mental illness and committed her to Winnebago State Hospital. After the incident, S.S.K. was taken first by C.N.'s mother and almost immediately transferred to *609 the care of C.N.'s sister (L.J.) and L.J.'s husband (J.J.). S.S.K. has since remained in their household in Waukesha county.
C.N. was under the supervision of the Department of Health and Social Services until January 24, 1983. C.N. and her second husband, R.N., were living in Marinette county at the time the petition was filed.
During C.N.'s stay at Winnebago, she saw S.S.K. twice, and on one occasion gave him a stuffed animal. There were no letters, cards or phone calls. After C.N.'s release, she did not make "any particular effort" to visit S.S.K., although there were a couple of chance meetings at the home of C.N.'s and L.J.'s mother. During this time, C.N. did not send any cards or gifts to S.S.K. and few, if any, letters. There were no phone calls.
A CHIPS petition was filed in May of 1985, alleging that nine-year-old S.S.K. had been abandoned under sec. 48.13(2), Stats., and that C.N. was neglecting, refusing or unable to provide the necessary care under sec. 48.13(10). Because C.N. had a statutory right to counsel and was indigent, a public defender was appointed.
C.N. has since been represented by four attorneys. All four moved to withdraw; all motions were granted with the exception of Attorney Cappozzo's.
The fact-finding hearing was to the court. Judge David Dancey found that the allegation of abandonment under sec. 48.13(2), Stats., had been proven. There was approximately one-half day of testimony at the dispositional stage. A stipulation was then approved which provided for S.S.K.'s continued placement with L.J. and J.J. and supervised visitation for C.N.
*610 Pursuant to sec. 48.356(1), Stats., a hearing was held to inform C.N. of any grounds for termination of parental rights and of the conditions necessary for S.S.K.'s "return" to the home. Other facts will be stated as necessary.

INEFFECTIVE ASSISTANCE OF COUNSEL
C.N. first requests relief from the orders because of ineffective assistance of counsel. This issue was raised in a post-disposition motion before Judge Marianne Becker, who denied the motion.
[1]
A claim of ineffective assistance of counsel arises under the Sixth Amendment to the United States Constitution. See Strickland v. Washington, 466 U.S. 668, 683 (1984); see also State v. Harris, 133 Wis. 2d 74, 78-79, 393 N.W.2d 127, 129 (Ct. App. 1986). The sixth amendment, by its own terms, is applicable only to criminal cases. "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Unless CHIPS cases are deemed criminal, C.N.'s right to counsel is purely statutory. See sec. 48.23(2)(b), Stats.
No published Wisconsin opinion has decided the question of whether a CHIPS proceeding is civil or, as C.N. argues, a special proceeding.[1] However, the question has arisen with respect to termination of parental rights (TPR) proceedings. Our supreme court stated: "Although serious human rights are implicated *611 in the termination-of-parental rights proceedings, the proceeding is civil in nature." In re M.A.M., 116 Wis. 2d 432, 442, 342 N.W.2d 410, 415 (1984).
Both TPR and CHIPS proceedings are governed by ch. 48, Stats., and are interrelated in a variety of ways.[2] The most significant substantive difference between the two proceedings is that a TPR proceeding has a permanent effect on the relationship between parent and child. See sec. 48.40(2), Stats. A CHIPS dispositional order, on the other hand, terminates at the end of one year, sec. 48.355(4), Stats., unless extended after compliance with sec. 48.365, Stats. In addition, CHIPS dispositional orders are subject to revision under sec. 48.363, Stats. Other than appeal, no similar post-dispositional relief is available in a TPR proceeding.
[2]
Because TPR proceedings are deemed civil and implicate serious human rights, see In re M.A.M., 116 Wis. 2d at 442, 342 N.W.2d at 415, we conclude that CHIPS proceedings, which implicate equally serious rights but have less permanency, are also civil proceedings.
As previously mentioned, a claim for ineffective assistance of counsel is not available in a civil case. See Village of Big Bend v. Anderson, 103 Wis. 2d 403, 405-06, 308 N.W.2d 887, 889 (Ct. App. 1981). C.N. argues that the present case can be distinguished from Anderson on two grounds.
First, C.N. contends that Anderson was premised in part on the fact that clients in a civil action retain the counsel of their choice. See id. at 405, 308 N.W.2d *612 at 889. In C.N.'s case, she was represented by courtappointed counsel. We recognize that this is a factual distinction; however, we do not consider this to be sufficient reason to fashion an exception to the general rule.
As a second point of distinction, C.N. questions the availability of a malpractice claim in a CHIPS proceeding, recognized by Anderson as the appropriate remedy in civil suits. Id. at 406, 308 N.W.2d at 889. Availability aside, we agree that a CHIPS proceeding may be unlike a typical civil action where "[a]dequate compensation may be measured in dollars and cents." Id. at 406-07, 308 N.W.2d at 889. However, Anderson noted another remedy which would be applicable in a CHIPS proceeding, i.e., discretionary reversal by the court of appeals under sec. 752.35, Stats. See Anderson, 103 Wis. 2d at 407, 308 N.W.2d at 889.
[3]
We have reviewed the record carefully and considered all of the parties' arguments, and we conclude that this case does not meet the strict standard for a discretionary reversal. Cf. id. at 407, 308 N.W.2d at 889-90. Nothing in the performance of any of C.N.'s attorneys prevented the real controversy from being tried or resulted in a miscarriage of justice. See sec. 752.35, Stats.

CONFLICT OF INTEREST
C.N. argues that the trial court erred in refusing to permit Attorney Cappozzo to withdraw. Before discussing the applicable law, additional facts need to be set forth.
Attorney Russell Van Skike represented C.N. from June 7 to August 21, 1985, withdrawing due to a *613 breakdown in communication with his client. Attorney Peter J. Plaushines was appointed on August 21, 1985, but declined the appointment after meeting with C.N. and R.N.[3]
Attorney Lee Dreyfus, Jr., represented C.N. from September 9 to November 15, 1985. He withdrew based on a conflict of interest which arose because R.N. indicated that he might file a lawsuit against the state alleging acts that occurred at a time when Attorney Dreyfus' father (also his client) was governor.
On November 19, 1985, Attorney Daniel Fay was appointed to represent C.N. One month later, Attorney Fay moved to withdraw because he refused to take certain steps, which C.N. requested. On January 6, 1986, C.N. (by way of a letter written by R.N.)[4] also moved the court for reappointment of counsel. One of the stated reasons was the fact that Attorney Fay wished to meet with C.N. without R.N. being present, and that this violated C.N.'s due process rights.
Judge Kieffer denied both motions on January 31, 1986, based on what he considered dilatory tactics by C.N. and R.N. On February 17, 1986, the trial court reconsidered and allowed withdrawal due to C.N.'s stated intention to file a malpractice action against Attorney Fay.
Attorney Frank Cappozzo was appointed the next day. His first motion to withdraw was on March 24, 1986, and was based on C.N.'s lack of cooperation in *614 communicating with him. On April 28, 1986, C.N. and R.N. moved the court for reappointment of counsel for C.N. One of the grounds for the motion was Attorney Cappozzo's desire to discuss the matter over the telephone with C.N., which C.N. and R.N. viewed as a possible invasion of C.N.'s privacy.
A second letter from C.N. and R.N., addressed to Attorney Cappozzo and filed with the trial court, stated that a formal complaint had been filed against him with the Board of Attorneys Professional Responsibility (BAPR). In addition, they advised Attorney Cappozzo that they would also file a malpractice claim against him.
At a motion hearing on May 8, 1986, Judge Kieffer noted that R.N. "has been attempting to act as a lawyer for his wife since Day One." In addition, the court considered R.N.'s correspondence as reflecting R.N.'s opinion "that the only competent lawyer to represent his wife is himself." The court summed up its decision as follows:
[R.N.] has once again interjected himself in this case and not only has he threatened to bring some type of legal action against Mr. Cappozzo, he has also threatened to bring that type of legal action against Mr. Fay and has also filed a complaint with the Board of Professional Responsibility as to the court-appointed Guardian ad Litem, Mr. Vaklyes.
As to all of these matters, the Court would find those allegations totally without foundation. The Court feels that [R.N.] is essentially attorney shopping and since he, or on behalf of his wife, has gone thru numerous attorneys at this time, the Court feels that it, in its own discretion, must put an end to this revolving door policy.

*615 The Court would deny the motion to withdraw on behalf of Mr. Cappozzo. While that may place you very much at a detriment, Mr. Cappozzo, I still feel that representation should be afforded to [C.N.]... .
Attorney Cappozzo's second motion to withdraw was filed on June 2, 1986. By this time, official notification of the BAPR proceedings had been received. Judge Kieffer denied the motion on June 6, 1986, again considering the actions of C.N. and R.N. as tactics and an attempt to "run this Court."
C.N. did not appear at the fact-finding hearing before Judge Dancey on September 2, 1986.[5] During the noon recess, Attorney Cappozzo received a letter from C.N. and R.N. stating that he was fired. The trial court construed the letter as a motion for reappointment of counsel and denied it on the same basis as earlier denials.
Having examined the voluminous facts created by the number of attorneys who have represented C.N., we now examine the applicable legal standards.
[4-6]
The question of whether appointed counsel should be relieved and another attorney substituted lies in the discretion of the trial court. State v. Stinson, 134 Wis. 2d 224, 244, 397 N.W.2d 136, 144 (Ct. App. 1986). A showing of good cause is required to warrant substitution of appointed counsel. Id. Generally, "eleventh-hour" requests are frowned upon, although good cause may warrant substitution regardless. See State v. Haynes, 118 Wis. 2d 21, 28, 345 N.W.2d 892, 896 (Ct. App. 1984). The right to counsel cannot be manipulated so as to obstruct the orderly procedure of the courts *616 or to interfere with the administration of justice. State v. Scarbrough, 55 Wis. 2d 181, 187, 197 N.W.2d 790, 793 (1972).
[7, 8]
An indigent respondent is entitled to competent counsel, but not necessarily counsel of his or her own choosing. State v. Johnson, 50 Wis. 2d 280, 283, 184 N.W.2d 107, 109 (1971). Only the court can "hire" and "fire" court-appointed counsel. Id. Whether the request for withdrawal or substitution is to be granted depends in part on consideration of the amount of preparatory work done at public expense and the avoidance of delay or dilatory tactics. Id.
[9]
At each of the hearings on the requests for withdrawal or substitution, the trial court meticulously examined all of the relevant facts. It carefully examined the law, giving proper weight to C.N.'s statutory right to counsel. The court then used a demonstrated rational process to reach a reasonable conclusion. In short, the court properly exercised its discretion. Cf. In re B.W.S., 131 Wis. 2d 301, 315, 388 N.W.2d 615, 622 (1986).
The trial court took note of the dilatory tactics employed by C.N. and R.N. when it denied Attorney Fay's first motion to withdraw. On several occasions, both Judges Kieffer and Dancey remarked on the attempts by R.N., through C.N., to manipulate the court, the attorneys and the proceedings.
C.N. attempts to bolster her position by frequent reference to the conflict of interest presented by the grievance filed with BAPR against Attorney Cappozzo. However, the trial court considered the grievance as part and parcel of the tactics being used, noting *617 that several malpractice actions had been threatened and at least two grievances had been filed with BAPR.
[10]
It has previously been recognized that denying an attorney's motion to withdraw and ordering the attorney to try the case as best as possible is a viable option when a client fails to appear. Sherman v. Heiser, 85 Wis. 2d 246, 255-56, 270 N.W.2d 397, 401 (1978). This was the result in the present case. Our review of the record shows that Attorney Cappozzo acted appropriatelyobjecting, arguing and eventually stipulating to an agreement which he, in his professional opinion, felt was fair and reasonable and protected his client's visitation rights.[6]
We find no abuse of discretion by the trial court in light of the circumstances surrounding C.N.'s representation. To delay the proceeding further would have been contrary to S.S.K.'s best interests, of paramount consideration in this proceeding. See sec. 48.01(2), Stats.

RECUSAL OF JUDGE
C.N.'s next argument is that Judge Kieffer erred in not recusing himself sua sponte prior to June 23, 1986, at which time he did so upon Attorney Cappozzo's motion. C.N. submits that Judge Kieffer's duty to recuse himself arose on June 6, 1986, when he put on *618 the record various contacts he had had with BAPR personnel, Attorney Cappozzo and Attorney Edmond Vaklyes, Jr., regarding the grievances. At this point, it is argued, Judge Kieffer's impartiality could reasonably be questioned, thus meeting one of the tests for recusal under State v. Asfoor, 75 Wis. 2d 411, 436, 249 N.W.2d 529, 540 (1977).
[11]
In response to C.N.'s allegation, we have closely examined the record in this case and conclude that Judge Kieffer's contacts with BAPR personnel were not inappropriate given the facts of this case.[7] Judge Kieffer's contacts did not evince any bias or partiality; he merely informed BAPR of his well-founded belief that the grievance filings were part of a dilatory scheme by R.N. and C.N. Most notably, he put those contacts on the record. We do not imply that trial judges can make contacts of this nature at any time so long as it is placed on the record. To the contrary, it is only the egregious conduct of the participants in this case that warranted the communications with BAPR.
Even if error occurred, we conclude that it was harmless and did not affect the outcome of the case. See McCrossen v. Nekoosa Edwards Paper Co., 59 Wis. 2d 245, 264, 208 N.W.2d 148, 159 (1973).
After the date on which C.N. argues that recusal should have occurred, Judge Kieffer ruled on the following: (1) exclusion of R.N., J.J. and L.J. from the fact-finding hearing; (2) S.S.K.'s participation in same; (3) transportation of C.N.'s criminal file to the trial *619 court; (4) exclusion of certain records regarding C.N.; (5) withdrawal of Attorney Cappozzo; and (6) C.N.'s waiver of a jury trial. Items 1 and 2 were never objected to by any party nor are those issues raised on appeal. Item 3 was only a procedural ruling designed to facilitate access to potentially relevant evidence. Item 4 was subsequently ruled on by Judge Dancey. We have independently examined Items 5 and 6 and observed nothing irregular nor erroneous about these rulings.
Even if Judge Kieffer would have recused himself on June 6, 1986, the outcome of this case would not have been affected. Therefore, reversal on this issue would not be warranted even if we were convinced that error occurred. Cf. McCrossen, 59 Wis. 2d at 264, 208 N.W.2d at 159.[8]

ADMISSIBILITY OF EVIDENCE
The trial court admitted certain portions of C.N.'s criminal filedates and places surrounding her first husband's death and her commitment. Nothing else in the file was referred to or admitted.
[12]
Questions of admissibility are within the trial court's discretion. Liles v. Employers Mut. Ins., 126 Wis. 2d 492, 502, 377 N.W.2d 214, 219 (Ct. App. 1985). This discretion must be exercised in accordance with accepted legal standards and the facts of record. Id.
C.N. fashions a unique argument that certain evidence was barred by the six-year statute of limitations of sec. 893.93(1)(a), Stats. Any practicing lawyer knows, or should know, that statutes of limitations *620 affect the time for commencing the action, see sec. 893.01, Stats., and are completely unrelated to rules of evidence. This argument borders on the absurd and deserves no further comment.
[13]
C.N. also argues that this evidence was remote in time and that its probative value was outweighed by its prejudicial effect. Again, this determination is within the trial court's discretion. State v. Hinz, 121 Wis. 2d 282, 285, 360 N.W.2d 56, 59 (Ct. App. 1984). The trial court noted the remoteness of portions of the file; therefore, only particular historical facts were admitted for the limited purpose of tending to establish C.N.'s whereabouts for the time during which abandonment was being alleged. This is an appropriate method of limiting any prejudicial effect.
The final argument C.N. raises regarding this evidence is that it was confidential under secs. 905.04(2) and 51.30(4)(a), Stats. First, we note that sec. 905.04(2) only protects "confidential communications" relating to the diagnosis or treatment of a patient. None of the admitted evidence comes within this category as the psychological and psychiatric reports were specifically excluded.
Likewise, the facts which were admitted into evidence are not protected by sec. 51.30, Stats. The privilege does not extend to court records other than records of proceedings under ch. 51, Stats. See sec. 51.30(3); see also sec. 51.30(1). Here, C.N.'s commitment was pursuant to sec. 971.17(1), Stats. The information admitted into evidence appears on the judgment roll of the criminal case and is a public *621 record. The mental health records protected by sec. 51.30 were not utilized by the trial court.[9]

DEFINITION OF "ABANDONMENT"
C.N. argues that the term "abandonment" as it is used in sec. 48.13(2), Stats., is unconstitutionally vague, and as a result she was denied due process in having to defend the charge. C.N. admits that this question was not raised until post-dispositional proceedings, but asks us to review it in our discretion under State v. Zelenka, 130 Wis. 2d 34, 44, 387 N.W.2d 55, 59 (1986).
[14]
There is a strong presumption favoring constitutionality of statutes. State v. Popanz, 112 Wis. 2d 166, 172, 332 N.W.2d 750, 753 (1983). The party challenging the statute's constitutionality carries a heavy burden of persuasion. State v. Hart, 89 Wis. 2d 58, 64, 277 N.W.2d 843, 846 (1979). A fair degree of definiteness is sufficient to uphold the statute's validity. State ex rel. Hennekens v. City of River Falls Police & Fire Comm'n, 124 Wis. 2d 413, 420, 369 N.W.2d 670, 674 (1985).
In attempting to meet her "heavy burden of persuasion," C.N. informs us that "abandonment" is not defined for purposes of CHIPS proceedings, although it is for TPR. See sec. 48.415(1), Stats. In addition, C.N. quotes a handful of definitions of "abandon" from a dictionary and concludes therefrom *622 that "[t]here appears to be no readily ascertainable, clearcut meaning."
[15]
C.N.'s argument is not persuasive enough to undermine the strong presumption of constitutionality. A mere showing that the boundaries of the area of proscribed conduct are somewhat hazy is insufficient to void the statute. Hennekens, 124 Wis. 2d at 420, 369 N.W.2d at 674.

CONDITIONS OF RETURN
C.N.'s final argument is that the trial court erred in conditioning S.S.K.'s return to her upon disclosure of information by a third party, namely, her husband R.N. She contends that it would have been more appropriate to require "monitored visits or a number of options."
The record shows a slightly different set of facts. First, supervised visitation by C.N. was explicitly permitted by the court order. Second, conditions for the return of S.S.K. were never fully established due to the almost total lack of cooperation by the appellant with the department.[10]
*623 C.N. contends that the formulation of the trial court's order employs means which are not the least restrictive of the parent's rights, thus contrary to sec. 48.355(1), Stats. However, when the best interests of the child come into conflict with the rights of a parent, resolution of the conflict is in favor of the child's interests. In re Z, 81 Wis. 2d 194, 203, 260 N.W.2d 246, 251 (1977).
It is in S.S.K.'s best interest for the department to have sufficient information to allow it to make a reasoned placement recommendation. To ignore the fact that placement with C.N. would also mean placement with R.N., as stepfather, is to engage in theoretical folly at the expense of S.S.K.
The trial court is constrained to make a placement decision based on the evidence before it. Sec. 48.355(1), Stats. When a parent seeks placement but chooses to live with an uncooperative spouse, the hands of the court are effectively tied.[11]
[16]
We conclude that the "conditions" were reasonable. In light of the dearth of information provided to the department and the failure of C.N. to attend the fact-finding or dispositional hearings, the "conditions" were perhaps the only available option.
By the Court.Orders affirmed.
NOTES
[] Petition to review denied.
[1] Earlier Wisconsin cases have considered special proceedings to be "hybrid" cases with civil and criminal attributes. See, e.g., Lueptow v. Schraeder, 226 Wis. 437, 444, 277 N.W. 124, 127 (1938).
[2] For example, certain CHIPS dispositions require the court to warn the parent of potential TPR proceedings. Sec. 48.356(1), Stats.; see also sec. 48.415(2), Stats.
[3] R.N. was represented throughout the case by Attorney Jennifer Wall. Although R.N. was not a party to the action, he stood to be S.S.K.'s stepfather if placement was ordered with C.N.
[4] The trial court stated at various times that R.N. was quite obviously drafting letters for C.N. throughout the case. After examining the record, we agree with the trial court.
[5] In addition, C.N. did not attend the dispositional hearing.
[6] In agreeing to the stipulation, Attorney Cappozzo noted:

I don't feel that based upon the testimony ... the court would have any basis upon which to order legal custody or physical placement anywhere other than in the home of [L.J. and J.J.], and in order to safeguard my client's right to visitation I feel it's appropriate to enter into this stipulation and ask the court to approve the same.
[7] Although Judge Kieffer ruled on June 23, 1986, that an appearance of partiality existed, we owe no deference to that ruling. Whether a judge evidences a lack of impartiality is a question of law which we review de novo. Murray v. Murray, 128 Wis. 2d 458, 463, 383 N.W.2d 904, 907 (Ct. App. 1986).
[8] The remaining issues arose from rulings and orders by Judge Dancey.
[9] We do not decide, however, whether the mental health records could have been admitted via sec. 51.30(4)(b)4, Stats., which provides an exception to confidentiality, if "[p]ursuant to lawful order of a court of record."
[10] The "conditions" approved by the court were as follows:

1) Conditions for return to parental care cannot be established until such time as [C.N.] and [R.N.] cooperate with the Department in:
a) Releasing all relevant background information[.]
b) Release pertinent information from appropriate psychological/psychiatric evaluations.
c) Allow a thorough home study to be completed.
Following the disclosure of such information, the Department will provide the Court with appropriate Conditions of Return. Until such time as this occurs, no progress can be made toward the return of [S.S.K.] to his mother's care. 2) In the interim, [C.N.] should maintain regular ongoing visitation with [S.S.K.]. These visits will be supervised by the Department. [R.N.] will be excluded from such visitation until further order of the Court.
[11] Additionally, nothing in the record evinces an attempt by C.N. to secure R.N.'s cooperation in this matter. Nor does it appear that she has personally made any significant effort towards cooperation with the department.